Theya Kanagaratnam
2316 Lakeshore Avenue, #16
Oakland, CA 94606
313-487-6206
theyak101@yahoo.com
Pro Se Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

THEYA KANAGARATNAM

                  Plaintiff,

        vs.

CENLAR FSB,

               Defendant.

Case No.   3:23-cv-02637-JD

Judge:  Hon. James Donato

### RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

For the following reasons and all the others discussed in Plaintiff's Amended Complaint, any future attempt to Dismiss this case by the Defendant should be denied:

### Factual Background And Failure To Prove Standing

1. Defendant has had ample opportunity to arrange a time and place with Plaintiff in order to prove standing by bringing the original note with Plaintiff's wet-ink signature and solve this of the matter instead of calling it the popular "Produce the Note Theory."

2. This Plaintiff's demand to verify the debt by examining the original note should not be considered as a "Produce the Note Theory" but must be considered as a serious matter. What if, after this matter has been settled with Plaintiff's payment to the Defendant even

in the face of Defendant's inability and failure to produce the Original Note with Plaintiff's wet-ink signature, some unknown third-party who acquired the note through some Pooling and Servicing investment or by some other means comes to Plaintiff and demands payment from Plaintiff?  Plaintiff would then be forced to make payments to this unknown third-party or risk losing her home.

3.  The only way this can be avoided is by Defendant producing the Original Note with Plaintiff's wet-ink signature and upon settlement, returning the Note back to Plaintiff as it is her property.  There can only be one and only one conclusion drawn from Defendant's failure to do so: that's Defendant is not in possession of the Original Note with Plaintiff's wet-ink signature.

4.  This establishes that the chain-of-title has been broken and it can never be reverse engineered; therefore, this render's any contract Defendant may claim null and void. And this Note upon which Deed of Trust rests defective and unenforceable.

5.  The Deed of Trust is Defective and Unenforceable for the following additional reasons:

1.  There is bifurcation.   The Note and Deed of Trust must be together at all times.  It is like a cat-and-a-tail.  They must travel together; one cannot be cut off from the other.  Both the body and the tail must be together; The tail cannot be removed from the body.

2.  In the case of Carpenter v. Longan, 83 U.S. (16 Wall.)271 (1872), under a U.S. supreme court ruling, it states "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."

3.  If the Note and the Deed of Trust are separated, then bifurcation has occurred and

that the Deed of Trust is defective and unenforceable.

4.   Moreover, there are two distinctly different versions of the Deed of Trust exist in this case as shown in Exhibit A and Exhibit B.

5.   Upon multiple demands by Plaintiff to verify the debt, each and every time, Defendant always and only sent Exhibit A as the "Certified True and Correct Copy" of the Deed of Trust along with the Note (Exhibit C).

6.   The Deed of Trust in Exhibit A is not the one recorded with Alameda County Registrar of Deeds and distinctly different than Exhibit B, the Deed of Trust that was recorded with Alameda County Registrar of Deeds on October 10, 2006.

7.   Page 1 and Page 2 of Exhibit A and Exhibit B are clearly not one and the same.

8.   Page 1 of Exhibit A is unrecorded and says "When Recorded Mail To: Citibank" whereas Page 1 of Exhibit B is recorded and says "When Recorded Mail To: Nationwide Appraisal Services Corp;"  Page 2 of Exhibit A consists of two different notary seals and different signatures than Page 2 of Exhibit B.

9.   These are clearly not one and same copies.

10.  These are irreconcilable differences that can never be reconciled.

11.  Operating with distinctly two different Deed of Trusts renders the entire Deed of Trust in Exhibit B Defendant is using to steal Plaintiff's home defective and unenforceable.

12.  An obvious misrepresentation of the truth.

6.   A negotiable instrument like the Promissory Note can be in one of two states: it can be either be a Note and treated and governed as such or be a stock and treated and governed as such; it can't be both a loan and stock at the same time.

7.   When it undergoes securitization, it is traded as a stock.

8.   Once it is traded as a stock, it is forever a stock and regulated by the SEC as a stock.

9.   To use an analogy, the Note is like a carrot and through the Pooling and Servicing Process Agreement and it is registered with the SEC Real Estate Mortgage Instrument Conduit (REMIC) Trust which is like a giant juicing machine consisting of thousands of other carrots (Notes) and the end result is gallons and gallons of carrot juice and sold to thousands of people.

10.  Therefore, through the Securitization Process Plaintiff's Note was sold to thousands of share-holders.

11.  Furthermore, the state of the Note was converted into a stock. Continuing on the analogy, it is like making carrot juice from thousands of carrots.

12.  It is now forever a stock just like carrot juice cannot be converted back to a carrot; this note divided up into stock-shares and was sold to thousands of share-holders cannot be reverse engineered to be a wholesome Note again.

13.  Neither the Defendant, nor a Principal to whom Defendant may claim Agency of, will never be able to prove standing once a Note had gone through securitization and became a stock.

14.  It renders any contract that might have existed null-and-void; thus, this Deed of Trust ( Exhibit A or Exhibit B) is referring and attempting to secure a Note that does not exist  or valid. Therefore, the Deed of Trust is defective and unenforceable.

15.  Defendant had attempted to steal Plaintiff's home by initially scheduling to sell Plaintiff's home on June 20, 2023.

16.  In the first filing of the Motion to Dismiss of this case in Docket Document #8, Page 4, Line #9 filed on June 1, 2023, Defendant's Counsel states "There has been no Notice of Trustee's Sale recorded…to date" when, in fact, a Notice of Trustee's Sale was recorded at the Alameda County Registrar of Deeds on May 12, 2023 (EXHIBIT D) after publicly posting it on the outside gate that is used by all the residents of where Plaintiff lives.

17.   This blatant, wanton, wilful misrepresentation of the truth – a big lie- by the Defendant and its counsel is disconcerting and cannot be brushed aside as a mistake because Defendant's counsel took over the case after the Notice of Sale was recorded with Alameda County Registrar of Deeds, and one cannot imagine her not inquiring the Defendant about the foreclosure sale date when taking on a case like this.

18.   Defendant and Counsel colluding to intentionally misrepresent the truth while Plaintiff was faced with the prospect of imminently becoming homeless is not something to be taken lightly.

19.   This court must take note of this and take the appropriate action for this blatant, wilful, wanton misrepresentation.

20.   If Defendant and Counsel are willing to lie and misrepresent something so obvious, publicly available and easily verifiable, one can only imagine the length they would go to conceal and misrepresent, matters that take place behind closed doors in stealing this Plaintiff's and other people's properties.

21.   Again Docket #8 Document is a testament to the fraud this Defendant and Counsel are willing to commit to hide the truth in order to steal Plaintiff's property.

## **Additional Points of Authorities**

22.   That Plaintiff disputes on whole the remaining arguments of Defendant given the apparent failure of consideration for **Defendant's** alleged claim of an actual delivery of a loan of money in the amount of 100,000.00 to Plaintiff that was originally claimed or asserted by Defendant can only be described as unethical, false, unjust enrichment and fraud.

23.   That Plaintiff is not in receipt of any admissible evidence filed of record that **Defendant** ever delivered a loan of money in the amount of 100,000.00 to Plaintiff at any time in the past and Plaintiff certainly did not receive such amount on October 2006, and believes that none exist.

24.   Since Defendant does business in California, said business is bound by and subject to the specific performance provisions of California Corporation Code in general and in this instant particular dealing with money is bound by Corp Code §107, Civil Code §1478, or

suffer the penalties of Penal Code § 648 which each code section provides in pertinent part that:

**California Corporation Code § 107** No corporation, social purpose corporation, association, or individual shall issue or put in circulation, **as money, anything but the lawful money of the United States.**          Emp added **bold** mine

**Civil Code § 1478** Performance of an obligation for **the delivery of money only, is called payment.**          Emp added **bold** mine

**Penal Code § 648** Every person who makes, issues, or puts in circulation any bill, check, ticket, certificate, **promissory note**, or the paper of any bank, **to circulate as money**, except as authorized by the laws of the United States, for the first offense, **is guilty of a misdemeanor, and for each and every subsequent offense, is guilty of felony.**   Emp added **bold** mine

All the above laws are consistent with, bound to and point to:

**Title 12 U.S.C. § 411. Issuance to reserve banks; nature of obligation; redemption Federal reserve notes**, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. **They shall be redeemed in lawful money on demand** at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.   Emp added **bold** mine

25.   The above referenced statutes are controlled by the mandate of the federal injunction and requirement of I, Section 10, Clause 1 of the American Constitution as it pertains to the subject of tender of obligations in payment of debt, to wit:

No State shall. . .make anything but gold and silver coin a tender in payment of debts;

This provision of the supreme Law of the Land is binding upon California as well as the rest of the American states of the American Union as a matter of law.  For any corporation to conduct its business pursuits in one of the states of the Union must conduct such pursuits in a medium of exchange established by the supreme Law of the Land.  Thus any corporation conducting its business pursuits within the exterior territorial limits of California outside of a federal enclave (area) must comply with the above cited provisions of law without fail.

26. That since Defendant relies upon the promissory note filed of record, Counsel has a heavy burden of proof to bring before the court evidence of **Defendant's** actual delivery of 100,000.00 of lawful money of the United States in light of the fact that Plaintiff has been informed, therefore believes and further alleges that there is no lawful money of the United States in current general circulation, given the fact that the current issuance of Federal Reserve Notes no longer contain on their face the verbiage stated in Title 12 U.S.C. 411 supra, to wit:

**"They shall be redeemed in lawful money on demand** at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank"

27. That Plaintiff has further been informed that the Internal Revenue Code addressing **worthless securities** at § **165(g)(2)(C)** clearly defines **(2) Security defined**

For purposes of this subsection, the term "**security**" means-
(A) a share of stock in a corporation;
(B) a right to subscribe for, or to receive, a share of stock in a corporation; or
(C) **a bond, debenture, note, or certificate, or other evidence of indebtedness,** issued by a corporation or by a government or political subdivision thereof, with interest coupons or in registered form.  Emp added **bold** mine

And further addressing debt instruments at IRC **1275(a)(1)(A)**
**§1275. Other definitions and special rules**
**(a) Definitions**
For purposes of this subpart-
**(1) Debt instrument**
**(A) In general**
Except as provided in subparagraph (B), the term "**debt instrument**" means a **bond,** debenture, **note**, or **certificate or other evidence of indebtedness**.

Emp added **bold** mine

28. From all the foregoing it is clear to Plaintiff that a worthless security/debt instrument have no intrinsic value that can be employed to comply with the requirement of a valuable consideration in a loan agreement by **Defendant** in comportment with the federal injunction and requirement of Article I, Section 10, Clause 1 supra as a matter of law and to the shock of Plaintiff, Plaintiff is persuaded to believe that beginning from Plaintiff's birth, all the days that Plaintiff has lived in America, all that Plaintiff and the

rest of us has ever received from labor or other services rendered were gross receipts of worthless securities/debt instruments. Absolutely unconscionable.

29. That neither the Internal Revenue Code nor the Revenue & Taxation Code  defines *"money*," but the courts have concluded that **it does not embrace** bonds, debentures, **notes** or other evidence of indebtedness.  *Knox v. Lee*, 12 Wall 552, *Bank of N.Y. v. New York County*, 7 Wall 26.

30. That the United States Supreme Court has held that debts that are not redeemable are valueless.  **Ontario Bank v. Lighbody**, 3 Wend. 101, **Eckart v. Burnet**, 283 US 140, **Helvering v. Price**, 309 US 409, **Gregory v. Helvering**, 293 US 465, **Putnam v. Commissioner**, 352 U.S. 82 (1956) **Williams v. Commissioner**, (1977) 429 U.S. 569.

31. That debt instruments like Federal Reserve Notes which lack the ability of redemption cannot form the basis of a tax obligation under the IRC or R&TC due to the inherent diminished fair market value and irredeemable nature of said debt instruments in light of IRC § § § 1(f)(3), (4), (5); 63 (c) (4), R&TC §§ 17041(h), 18501(c) and HJR 192 supra.

32. That the U.S. Supreme Court in *Williams v. Commissioner* supra, held that a debt cannot be taxed as income because a debt is something that may never be paid.

33. That Federal Reserve Notes meet the description and definition of "note" as defined in the IRC § 1275 as evidence of indebtedness and "worthless security" as defined in IRC § 165(g), see also R&TC § 19312.

34. That if Federal Reserve Notes are by definition worthless securities and cannot form the basis by which to measure for taxable income, neither can they form the basis for a consideration of lawful money, especially so since they no longer are redeemable in lawful money of the United States.

35. That in light of the remedy provision of **HJR 192 of June 5, 1933** and the guarantee of equal protection under the laws of consideration, currency and tender contained in the Fourteenth Amendment that Plaintiff respectfully request the honorable court to take mandatory judicial notice of Plaintiff's constitutionally guaranteed right to discharge any outstanding debt by asserting said remedy provided in HJR 192 supra as amended to a full and complete discharge of all monetary claims, debts and fees pertaining to this instant matter, dollar for dollars (promissory note for promissory note) or other **in like kind** medium of exchange consideration, currency and tender in the interest of

fundamental fairness, imperative justice and the full due process of law.

36.  That Plaintiff reminds the honorable court that Peonage and involuntary servitude are expressly prohibited under the Thirteenth Amendment and R. S. §1990 [42 U.S.C. § 1994] *Clyatt v United States* (1905) 197 US 207, 49 L Ed 726, 25 S Ct 429; *Bailey v Alabama* (1911) 219 US 219, 55 L Ed 191, 31 S Ct 145; *United States v Reynolds* (1914) 235 US 133, 59 L Ed 162, 35 S Ct 86; *Taylor v Georgia* (1942) 315 US 25, 86 L Ed 615, 62 S Ct 415 as well as California Constitution at Article I, Section 6 and the court is duly notice of same.

37.  That in light of all the foregoing, Opposing Counsel's response is disingenuous and evidences a violation of FRCP Rule 11(b), (c) requirement to:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper-whether by signing, filing, submitting, or later advocating it-an attorney or unrepresented party **certifies** that to the best of the person's knowledge, information, and belief, **formed after an inquiry reasonable under the circumstances**:
(1) **it is not being presented for any improper purpose, such as to harass**, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) **the claims**, defenses, and other legal contentions **are warranted by existing law** or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
       (c) Sanctions                                          emphasis added **bold** mine

38.  That the Truth in Lending Act was passed to prevent unsophisticated consumers from being misled as to total cost of financing by so-called lenders.

39.  That the Truth in Lending Act is strictly a liability statute liberally construed in favor of consumers.

40.  That Regulation Z - 12 CFR § 226.17(c)(1) and RESPA - Title 12 U.S.C. § 2605(e) require **full disclosure** of all the terms and conditions of loan agreement.

41.  That despite all the foregoing, **Defendant** clearly deprived Plaintiff of the **right to full disclosure** to know what specific medium of exchange the purported loan of money in the amount of 100,000.00 was expressed in terms of, thus depriving Plaintiff to the full disclosure of everything pertaining to the subject loan of money. Clearly a willful violation of TILA, Regulation Z - 12 CFR § 226.17(c)(1) and RESPA - Title 12 U.S.C. § 2605(e) among other federal laws as well as California disclosure laws that protect the consumer.

1

Violations of Fair Debt Collection Practices Act (FDCPA)

2

42.  Defendant had initiated a few hundred calls, sometimes twice a day and even

3

on weekends and early mornings and evenings, to Plaintiff's personal telephone number

4

from 1-800-242-7178 between January 2021 and February 2023 as listed in Exhibit E.

5

43.  Plaintiff's preliminary investigations reveal that Defendant employs several subsidiaries

6

as Debt Collection Agencies that work under the direction provided by the Defendant in

7

engaging in these abusive practices and they appear to utilize Third Party Control

8

Protocol (TPCP) where most often than not with nobody on the other side but a pre-

9

10

recorded message asking Plaintiff to hold until one of Defendant's Agents comes online,

11

and then most often than not, those calls would get disconnected.

12

44.  It can be stated that Defendant is a "repeated offender" as this Offence has been well-

13

documented and illustrated by the publicly available Class Action Lawsuit Case #: 4:20-

14

cv-40006 called Ely Gemborys v. Cenlar Agency, Inc., which was brought against the

15

Defendant in 2019 and was settled for $612,500 in Year 2021.

16

17

45.  Defendant Cenlar settled the Ely Gembory's lawsuit against them in Massachusetts in

18

which the Plaintiff charged the Defendant and its subcontractors' companies as debt

19

collectors in spite of counsel's statement that Cenlar is not a debt collector.

20

46.  This goes to show the reckless disregard to the rule of law and the abusive nature of this

21

Defendant.  It is crystal clear even in the face of such deep punishment, Defendant has

22

not changed this abusive, harassing business malpractice and has failed to implement

23

corrective measures to prevent such abuse and harassment to date as demonstrated by the

24

evidence Plaintiff has obtained from her phone carrier.  (Incidentally, Call records prior

25

to January 2021 can be obtained only with a court-order.)

26

47.   There were also Federal Forbearance Moratorium and Foreclosure Moratorium that were in effect during some of these time periods when Defendant was heavily engaged in this misconduct.

48.   Plaintiff lost close family members in November of 2020, February of 2021 and March of 2021 and was in mourning and dealing with deep depression as well as a chronic illness that has been plaguing her for sometime.   She vaguely recalls explaining the situation to Defendant's Agent during one of the calls that she needed time to get things sorted out.    Nevertheless, those calls continued as shown in the evidence provided by the Phone Carrier.

49.   Clearly, Defendant does not have an operation that properly trains its staff and follows rules and guidelines established by the Consumer Financial Protection Bureau (CFPB). For example, at no time does CFPB ever advocate such abuse and misuse by employing such an overkill strategy that bears no fruit but causes anguish and distress in addition to repeatedly wasting people's time.

50.   It's well-documented in the 2019 Class Action Law Suit, Defendant's operation abused and harassed well over 10,000 people in Massachusetts with this business malpractice, so one can only imagine how many thousands more are affected nation-wide by this misconduct by the Defendant.

**<u>Summary and Conclusions</u>**

With all the points Plaintiff has made above individually and collectively and in the First Amended Complaint gives plenty of cause of action and claims for which relief can be granted and to continue to move forward with suit:

1.   The main one being Defendant has repeatedly failed to prove standing but has

been attempting to steal Plaintiff's home with an irreconcilable, defective, unenforceable Deed of Trust.

2.   Plaintiff had sued Defendant to demand that Defendant complied with long standing law and well-established principles of commerce.  Defendant has failed to comply:  Where Defendant had claimed agency for a principal, Plaintiff demanded that Defendant proved that Defendant's alleged principal had standing as a proper holder of the alleged obligation. Plaintiff further demanded proof of Defendant's agency to represent said principal.  Defendant has failed to prove agency for a Principal with standing as a proper holder of the alleged obligation.  Defendant has failed to show proof; therefore, the obvious conclusion is that no instrument exists wherein Plaintiff has an obligation to Defendant.

3.   Defendant failed to establish that it owned or held the Deed of Trust or the Note at the commencement of its foreclosure action; therefore, Defendant has no claim to Plaintiff's property or the right to prosecute any foreclosure.

4.   Plaintiff, further demanded that Defendant established the Entire chain of agency, from inception of the note up to the current alleged holder. Defendant has failed to do so as required by law; Chain of Title was broken, Note and the Deed of Trust were bifurcated, and lien positions were not perfected.  Defendant is not a real party of interest; therefore, Defendant is not authorized to bring any foreclosure action.

5.   Furthermore, Even if Defendant were to prove standing, Plaintiff, has already discharged and set-off the debt, especially in light of the Points of Authorities cited above, by tendering two forms of legal negotiable instruments each for the

amount of $71,000 both of which were accepted and kept in possession by

Defendant CENLAR FSB and never returned to Plaintiff as per the instructions

provided with the two instruments.

And as per UCC § 3-603(b) TENDER OF PAYMENT:

(b) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

Even it's refused, there is still discharge.  Therefore, Plaintiff demands a certified

Release/Satisfaction/Reconveyance of both, the Mortgage Note and Mortgage

Lien Security to be filed without delay and originals be hand delivered to this

court to be given to Plaintiff as her rightful property, the true owner in due course

after the court's written verification of authenticity.

6.    Delving deeper into the Class Action lawsuit in violation of the FDCPA, It is

ever so obvious Defendant has been extremely negligent in its conduct that has

caused anguish and harm to tens of thousands of people nation-wide.

7.    Therefore, this repeated offender's conduct should be subjected to maximum

punishment as Defendant has demonstrated repeatedly, it has no intention of

correcting this conduct.

8.    Defendant's conduct of non-stop excessive calling of Plaintiff's personal phone

for over a period of two years is nothing short of pure abuse and negligence.

9.    Unless and until Defendant is punished severely for this conduct that had already

affected tens of thousands of People in Massachusetts and most likely countless

number of others nation-wide, without a doubt, this conduct of abuse and

harassment by the Defendant will continue.

10. Therefore, it is incumbent upon this court and honorable judge to hold this Defendant accountable for this business malpractice and misconduct.

11. It would be a grave mistake to let Defendant and counsel get off easily as they have attempted to do with their Motion to Dismiss, especially on Docket Document #8 on June 1, 2023 Defendant and Counsel blatantly lied and misrepresented as stated above in an attempt to steal Plaintiff's home quickly and make her homeless.

12. It is also worrisome, given time what other lies they may propagate and shenanigans they may try to pull in attempting to steal Plaintiff's home and cause harm.

13. Therefore, it is incumbent upon this court and honorable judge to deny any future attempt to dismiss this case by this Defendant and to hold Defendant and its co-conspirators accountable and uphold the rule-of-law.

Dated:  July 27, 2023          Respectfully Submitted: _____

                                        Theya Kanagaratnam

                                        Pro Se Plaintiff

# EXHIBIT A

Certified True And Correct Copy

**When Recorded Mail To:**
**Citibank**
**Document Administration**
**1000 Technology Drive- MS 221**
**O'Fallon, MO  63368-2240**

**This Instrument Was Prepared By:**
SHILPA PANSANIA
Citibank
P.O. Box 790017, MS 221
St. Louis, MO  63179
(800) 925-2484

# Home Equity Line of Credit DEED OF TRUST
### ACCOUNT NO.:  106091318334000

In this Deed, "You", "Your" and "Yours" means, <u>THEYA KANAGARATNAM, A SINGLE WOMAN</u>, of <u>2316 LAKESHORE AV, 16, OAKLAND, CA  94606</u>, each person signing as trustor.  "We," "Us" and "Our" means CITIBANK, N.A. (.  The "Trustee" means Verdugo Trustee Service Corporation or any successor appointed pursuant to Paragraph 26 of this Deed of Trust.  The "Borrower" means the individual(s) who has(ve) signed the Home Equity Line of Credit Agreement and Disclosure (the "Agreement") of even date herewith and in connection with this Deed of Trust.

The "Property" means the real estate, including the leasehold (if any), located at <u>2316 LAKESHORE AV, 16, OAKLAND, CA  94606</u> and having the legal description attached to and made a part of this Deed of Trust.

THIS MORTGAGE between You, Trustee and Us is made as of the date next to Your first signature below and has a final maturity date 30 years and 2 months from such date.

The Agreement provides that the credit secured by the Property is an open-end revolving line of credit at a variable rate of interest.  The maximum amount of all loan advances made to the Borrower under the Agreement and which may be secured by this Deed of Trust may not exceed <u>$100,000.00</u> (the "Credit Limit").  At any particular time, the outstanding obligation of Borrower to Us under the Agreement may be any sum equal to or less than the Credit Limit plus interest and other charges owing under the Agreement and amounts owing under this Deed of Trust.  Obligations under the Agreement, Deed of Trust and any riders thereto shall not be released even if all indebtedness under the Agreement is paid, unless and until We cause a reconveyance of the Property to be executed to You and such reconveyance is properly recorded.

TO SECURE to Us: (a) the payment and performance of all indebtedness and obligations of the Borrower under the Agreement or any modification or replacement of the Agreement; (b) the payment of all other sums advanced in accordance herewith to protect the security of this Deed of Trust, with finance charges thereon at the variable rate described in the Agreement; and (c) the payment of any future advances made by Us to Borrower (pursuant to Paragraph 16 of this Deed of Trust (herein "Future Loan Advances")) and, in consideration of the indebtedness herein recited and the trust herein created, You hereby irrevocably grant and convey to Trustee, in trust, with, if allowed by applicable law, power of sale, the Property.

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to You to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, water rights and water stock, and all fixtures now or hereafter attached to the Property (which, if this Deed of Trust is on a unit in a condominium project or planned unit development, shall include the common elements in such project or development associated with such unit), all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property.

CFX-H-SI-703-CA
KANAGARATNAM
769717 000009075 09SP25 00064047

1 of 6

Revised 09/27/2006
ACAPS: 106091318334000



Deed of Trust, continued

IN WITNESS WHEREOF, YOU HAVE EXECUTED THIS DEED OF TRUST, AND AGREE TO BE BOUND BY ALL TERMS AND CONDITIONS STATED ON PAGES 2 THROUGH 6 FOLLOWING.

_Theya Kanagaratnam Tr_   10/03/2006

Trustor: **THEYA KANAGAPATNAM**                        Trustor:
[ ] Married                    [ ] Unmarried          [ ] Married                    [ ] Unmarried

_Theya Kanagara_

Trustor:      **THEYA KANAGARATNAM**                   Trustor:
[ ] Married                    [ ] Unmarried          [ ] Married                    [ ] Unmarried

[ ] Married                    [ ] Unmarried          [ ] Married                    [ ] Unmarried

STATE OF CALIFORNIA _Alameda_
COUNTY OF _____                _Phyllis E. Grigsby, Notary Public_

On **10/03/2006**, before me, **THEYA KANAGAPATNAM**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the same person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



_____
(Signature of Person Taking Acknowledgment)

MY COMMISSION EXPIRES

PHYLLIS E. GRIGSBY
Commission # 1425004
Notary Public - California
Alameda County
My Comm. Expires Jun 16, 2007

_____
(Signature of Person Taking Acknowledgment Typed, Printed or Stamped)

You covenant that You are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant, and convey the Property, and that the Property is unencumbered, except for the encumbrances of record and any first deed of trust. You covenant that You warrant and will defend generally the title to the Property against all claims and demands, except those disclosed in writing to Us as of the date of this Deed of Trust.

You and We covenant and agree as follows:

1. **Payment of Indebtedness.** Borrower shall promptly pay when due the indebtedness secured by this Deed of Trust including, without limitation, that evidenced by the Agreement.

2. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Us under the Agreement will be applied to the principal balance and any finance charges, late charges, collection costs, and other charges owing with respect to the indebtedness secured by this Deed of Trust in such order as We may choose from time to time.

3. **Charges; Liens.** Except as expressly provided in this Paragraph 3, You shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any, by Your making payments, when due, directly to the payee thereof. In the event You make payments directly to the payee thereof, upon Our request You shall promptly furnish to Us receipts evidencing such payment.



## Deed of Trust, continued

You shall make payments, when due, on any indebtedness secured by a deed of trust or other lien that is prior in right time to this Deed of Trust (a "Prior Deed of Trust"). You shall promptly discharge the lien of any Prior Deed of Trust not disclosed to Us in writing at the time of application for the Agreement, provided, however, that You shall not be required to discharge any such lien so long as You shall (a) in good faith contest such lien by, or defend enforcement of such lien in, legal proceedings which operate to prevent the enforcement of the lien or forfeiture of the Property or any part thereof, or (b) secure from the holder of such prior lien an agreement in form and substance satisfactory to Us subordinating such lien to the Deed of Trust. You shall not enter into any agreement with the holder of a Prior Deed of Trust whereby such Prior Deed of Trust, or the indebtedness secured thereby is modified, amended, extended or renewed, without Our prior written consent. You shall neither request nor allow any future advances to be secured by a Prior Deed of Trust without Our prior written consent.

4. **Hazard Insurance.** You shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and such other hazards as We may require (including flood insurance coverage, if required by Us) and in such amounts and for such periods as We may require. Unless We require in writing otherwise, the policy shall provide insurance on a replacement cost basis in an amount not less than that necessary to comply with any coinsurance percentage stipulated in the hazard insurance policy. All insurance policies and renewals thereof shall be in form and substance and with carriers acceptable to Us and shall include a standard mortgage clause in favor of and in form and substance satisfactory to Us. In the event of loss, You shall give prompt notice to the insurance carrier and Us. We may make proof of loss if not made promptly by You.

If the Property is abandoned by You, or if You fail to respond to Us within thirty (30) days from the date the notice is mailed by Us to You that the insurance carrier offers to settle a claim for insurance benefits, We are authorized to collect and apply the insurance proceeds at Our option either to restoration or repair of the Property, or to sums secured by this Deed if Trust.

If the Property is acquired by Us under Paragraph 14 of this Deed of Trust, all of Your right, title and interest in and to any insurance policies, and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition, shall pass to Us to the extent of the sums secured by this Deed of Trust immediately prior to such sale or acquisition.

The provisions of this Paragraph 4 shall be subject to the provisions of Paragraph 5 if this Deed of Trust covers a unit in a condominium project or planned unit development.

5. **Preservation and Maintenance of Property; Condominiums and Planned Unit Developments.** If this Deed of Trust is on a unit in a condominium or a planned unit development (herein "Condominium Project"), then: (a) You shall perform all of Your obligations under the declaration or covenants creating or governing the Condominium Project, the by-laws and regulations of the Condominium Project, and all constituent documents (herein "Project Documents"), including the payment when due of assessments imposed by the homeowners association or other governing body of the Condominium Project (herein "Owner's Association"); (b) You shall be deemed to have satisfied the insurance requirements under Paragraph 4 of this Deed of Trust if the Owners Association maintains in full force and effect a "master" or "blanket" policy on the Condominium Project which provides insurance coverage against fire, hazards included within the term "extended coverage" and such other hazards (including flood insurance) as We may require, and in such amounts and for such periods as We may require naming Us as additional loss payee; (c) the provisions of any Project Documents regarding the application of any insurance proceeds from "master" or "blanket" policies covering the Condominium Project shall supersede the provisions of Paragraph 4 of this Deed of Trust to the extent necessary to avoid conflict between the provisions thereof and hereof; (d) You hereby assign to Us the right to receive distributions on account of the Property under "master" or "blanket" policies covering the Condominium Project to the extent not applied to the restoration or repair of the Property, with any such distributions in excess of the amount necessary to satisfy in full the obligations secured by this Deed of Trust being paid to You; (e) You shall give Us prompt written notice of any lapse in any insurance coverage under a "master" or "blanket" policy on the Condominium Project; and (f) You shall not, without Our prior written consent, consent to either (i) the abandonment or termination of the Condominium Project (except for the abandonment or termination provided by law in the case of substantial destruction by fire or other casualty or in the case of a taking or condemnation or eminent domain), (ii) any material amendment to the Project Documents (including any change in the percentage interests of the unit owners in the Condominium Project), or (iii) the effectuation of any decision by the Owners Association to terminate professional management and assume self-management of the Condominium Project. If the Property has rental units, You shall maintain insurance against net loss in addition to the other hazards for which insurance is required herein.

6. **Protection of Our Security.** If you fail to perform Your obligations under this Deed of Trust, or if any action or proceedings adversely affects Our interest in the Property, We may, at Our option, take any action reasonably necessary (including, without limitation, paying expenses and attorney fees and to have entry upon the Property to make repairs) to perform Your obligations or to protect Our interests. Any amounts disbursed by Us pursuant to this Paragraph 6, with interest thereon at the variable rate described in the Agreement, shall become indebtedness secured by this Deed of Trust (except as expressly provided herein). Nothing contained in this Paragraph 6 shall require Us to incur any expense or take any action hereunder.

CFX-H-SI-703-CA
KANAGARATNAM

3 of 6

Revised 09/27/2006
ACAPS: 106091318334000

769717  000009075  09SP25  00064047



**Deed of Trust, continued**

7. **Inspection.** We or Our agents may enter and inspect the Property, after giving You reasonable prior notice.

8. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Us. Neither Borrower nor You will be relieved of any obligation to make payments if We apply the award received to the outstanding balance owed.

If You abandon the Property, or if, after notice by Us to You that the condemnor offers to make an award or settle a claim for damages, You fail to respond to Us within thirty (30) days after the date such notice is mailed, We are authorized to collect and apply the proceeds in the same manner as provided in Paragraph 4 hereof.

9. **Forbearance Not a Waiver.** Any forbearance by Us in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy in the future. Any waiver by Us must be in writing and signed by Us.

10. **Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, Your and Our respective successors and assigns, subject to the provisions of Paragraph 13 hereof. All Your covenants and agreements shall be joint and several. The captions and headings of the paragraphs of this Deed of Trust are for convenience only and are not to be used to interpret or define the provisions hereof. Any Trustor who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Trustor's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Trustor hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Trustor's consent and without releasing that Trustor or modifying this Deed of Trust as to that Trustor's interest in the Property.

11. **Notices.** Except for any notice required under applicable law to be given in another manner, (a) any notice to You provided for in this Deed of Trust shall be given by personal delivery or by mailing such notice by first-class postage paid, addressed to You at the address of the Property shown at the beginning of the Deed of Trust or at such other address as You may designate by notice to Us as provided herein, and (b) any notice to Us shall be given by personal delivery or by mailing such notice by certified mail, return receipt requested, to Our address stated herein or to such other address as We may designate by notice to You as provided herein.

12. **Severability.** If any term of this Deed of Trust is found to be unenforceable, all other provisions will remain in full force.

13. **Due on Transfer Provision - Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in You is sold or transferred and You are not a natural person) without Our prior written consent, We may, at Our option, require immediate payment in full of all sums secured by this Deed of Trust. However, We shall not exercise this option if the exercise is prohibited by applicable law as of the date of this Deed of Trust. If We exercise this option, We shall give You notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which all sums secured by this Deed of Trust must be paid. If these sums are not paid prior to the expiration of this period, We may invoke any remedies permitted by this Deed of Trust without further notice or demand on You.

14. **Default.** If You breach any term in this Deed of Trust, or if Borrower fails to perform any obligation under the Agreement, We may, at Our option, declare all sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale under this Deed of Trust and any other remedies permitted by law. We may collect from You all reasonable costs incurred in enforcing the terms of this Deed of Trust, including attorney's fees and allocated costs of Our salaried employees.

15. **Assignment of Rents.** As additional security hereunder, You hereby assign to Us the rents of the Property; provided, however, that You shall have, prior to acceleration under Paragraph 14 hereof or abandonment of the Property, the right to collect and retain such rents as they become due and payable.

16. **Future Loan Advances.** Upon Your request, We at Our option may make Future Loan Advances to You or Borrower. Such Future Loan Advances, with interest thereon, shall be secured by this Deed of Trust when evidenced by a promissory note or agreement stating that said note or agreement is so secured.

17. **Release.** Upon payment of all sums secured by this Deed of Trust and upon (a) expiration of the Agreement or (b) Your request, We shall release this Deed of Trust and You shall pay all costs of recordation, if any.

CFX-H-SI-703-CA
KANAGARATNAM

4 of 6

Revised 09/27/2006
ACAPS: 106091318334000

769717  000009075  098P25  00064047



## Deed of Trust, continued

**18. Appointment of Receiver; Lender in Possession.** Upon acceleration under this Deed of Trust or abandonment of the Property, We shall be entitled to have a receiver appointed by a court to enter upon, take possession of, and manage the Property and collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including but not limited to, receiver's fees and premiums on the receiver's bonds and reasonable attorneys' fees and then to the sums secured by this Deed of Trust. The receiver shall be liable to account only for those rents actually received.

**19. Statement of Obligation.** We may collect a fee for furnishing a statement of obligation in an amount not to exceed the maximum amount permitted under applicable law.

**20. No Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for Our benefit in any capacity, without Our prior written consent.

**21. Fixture Filing.** This Deed of Trust constitutes a financing statement filed as a fixture filing in the Official Records of the County Recorder of the county in which the Property is located with respect to any and all fixtures included within the term "Property" as used in this Deed of Trust and with respect to any goods or other personal property that may now or hereafter become such fixtures.



**22. Third Party Waivers.** In the event that any of You has not also signed the Agreement as Borrower, each of You: (a) agrees that We may, from time to time, without notice to, consent from or demand on You, and without affecting or impairing in any way any of Our rights or Your obligations, (i) renew, extend, accelerate, compromise or change the interest rate or other terms of the Agreement and any promissory note or agreement evidencing a Future Loan Advance, and (ii) accept, waive and release other security (including guarantees) for the obligations arising under the Agreement or any promissory note or agreement evidencing a Future Loan Advance, and (b) waives (i) any right to require Us to proceed against any Borrower or any other person, proceed against or exhaust any security for the obligations secured by this Deed of Trust or pursue any other remedy in Our power whatsoever, (ii) any defense or right against Us arising out of any disability or other defense or cessation of liability of any Borrower for any reason other than full payment, (iii) any defense or right against Us arising out of Our foreclosure upon the Property, even though such foreclosure results in the loss of any right of subrogation, reimbursement or other right You have against any Borrower, (iv) all presentments, diligence, protests, demands and notice of protest, dishonor, and nonperformance, (v) until payment in full of the indebtedness secured by this Deed of Trust, any right of subrogation or the benefit of any security for such indebtedness, and (vi) the benefit of the statute of limitations affecting the Property to the extent permitted by law. Any partial payment by Borrower or other circumstance that operates to toll any statute of limitations as to such person shall operate to toll such statute as to You.

**23. Choice of Law.** The Deed of Trust will be governed by United States federal law and, to the extent the United States federal law is inapplicable, then by the laws of the State of Nevada; except that, with regard to the perfection and enforcement of Citibank's security interest in the Property, the Deed of Trust will be governed by the law of the state where the Property is located.

**24. Your Copy.** You shall be given one conformed copy of the Agreement and this Deed of Trust.

**25. Loan Charges Legislation Affecting Our Rights.** If the Agreement is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Agreement exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any such loan charge already collected from You or Borrower which exceeded permitted limits will be refunded to You or Borrower; We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to You or Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge due. If enactment or expiration of applicable laws has the effect of rendering any provision of the Agreement or this Deed of Trust unenforceable according to its terms, We may at Our option, require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted by Paragraph 14.

**26. Substitute Trustee.** We may, at our Option, from time to time remove the Trustee and appoint a successor Trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor Trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**27. Reconveyance.** After compliance with all requirements of the Agreement, We shall request the Trustee to reconvey the Property to You. Trustee shall reconvey the Property without warranty. You shall pay any fee legally charged by the Trustee for the issuance of reconveyance and all costs of recordation.

CFX-H-SI-703-CA
KANAGARATNAM

5 of 6

Revised 09/27/2006
ACAPS: 106091318334000

769717 000009075 09SP25 00064047

**Deed of Trust, continued**



## REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
## UNDER SUPERIOR DEED OF TRUST OR MORTGAGE

We and You request the holder of any encumbrance with a lien which has priority over this Deed of Trust give notice to Us, at Our address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

## REQUEST FOR RECONVEYANCE

TO TRUSTEE:



The undersigned is the holder of the Agreement secured by this Deed of Trust. The Agreement together with all other indebtedness and obligations secured by this Deed of Trust have been paid and performed in full. Trustee is hereby directed to cancel the Agreement and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all estate now held by Trustee to the persons legally entitled thereto.

Date: _____     _____

769717 000009075 09SP25 00064047

# SCHEDULE A

The following described real property in the City of Oakland, County of Alameda State of California:

Parcel One:

An undivided 4.2% interest as tenant in common in and to Tract 4135, filed April 2, 1979, in Book 110, Page 5, of Maps, Alameda County Records.

Parcel Two:

Unit 16, Building 2316, as shown on said condominium Plan.

Tax ID: 023-0415-036



# EXHIBIT B

2

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO

When Recorded Mail To:

Nationwide Appraisal Services Corp.
380 Southpointe Blvd.
Plaza 1, Suite 300
Canonsburg, PA 15317
(800) 920-0050   20218293



2006381619   10/10/2006 02:49 PM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:   31.00

8  PGS

This Instrument Was Prepared By:
SHILPA PANSANIA
Citibank
P.O. Box 790017, MS 221
St. Louis, MO 63179
(800) 925-2484

*102*
8
se*

## Home Equity Line of Credit DEED OF TRUST
ACCOUNT NO.: 106091318334000

In this Deed, "You", "Your" and "Yours" means, **THEYA KANAGARATNAM, A SINGLE WOMAN**, of **2316 LAKESHORE AV, 16, OAKLAND, CA 94606**, each person signing as trustor. "We," "Us" and "Our" mean **CITIBANK, N.A.** (. The "Trustee" means Verdugo Trustee Service Corporation or any successor appointed pursuant to Paragraph 26 of this Deed of Trust. The "Borrower" means the individual(s) who has(ve) signed the Home Equity Line of Credit Agreement and Disclosure (the "Agreement") of even date herewith and in connection with this Deed of Trust.   *Theya Kanagaratnam*

The "Property" means the real estate, including the leasehold (if any), located at **2316 LAKESHORE AV, 16, OAKLAND, CA 94606** and having the legal description attached to and made a part of this Deed of Trust.

THIS MORTGAGE between You, Trustee and Us is made as of the date next to Your first signature below and has a final maturity date 30 years and 2 months from such date.   *See "schedule A" for legal*

The Agreement provides that the credit secured by the Property is an open-end revolving line of credit at a variable rate of interest. The maximum amount of all loan advances made to the Borrower under the Agreement and which may be secured by this Deed of Trust may not exceed **$100,000.00** (the "Credit Limit"). At any particular time, the outstanding obligation of Borrower to Us under the Agreement may be any sum equal to or less than the Credit Limit plus interest and other charges owing under the Agreement and amounts owing under this Deed of Trust. Obligations under the Agreement, Deed of Trust and any riders thereto shall not be released even if all indebtedness under the Agreement is paid, unless and until We cause a reconveyance of the Property to be executed to You and such reconveyance is properly recorded.

TO SECURE to Us: (a) the payment and performance of all indebtedness and obligations of the Borrower under the Agreement or any modification or replacement of the Agreement; (b) the payment of all other sums advanced in accordance herewith to protect the security of this Deed of Trust, with finance charges thereon at the variable rate described in the Agreement; and (c) the payment of any future advances made by Us to Borrower (pursuant to Paragraph 16 of this Deed of Trust (herein "Future Loan Advances")) and, in consideration of the indebtedness herein recited and the trust herein created, You hereby irrevocably grant and convey to Trustee, in trust, with, if allowed by applicable law, power of sale, the Property.

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to You to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, water rights and water stock, and all fixtures now or hereafter attached to the Property (which, if this Deed of Trust is on a unit in a condominium project or planned unit development, shall include the common elements in such project or development associated with such unit), all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property.

CFX-H-S1-703-CA
KANAGARATNAM

1 of 6

Revised 09/27/2006
ACAPS: 106091318334000

Deed of Trust, continued                                           **citibank**

IN WITNESS WHEREOF, YOU HAVE EXECUTED THIS DEED OF TRUST, AND AGREE TO BE BOUND BY ALL TERMS
AND CONDITIONS STATED ON PAGES 2 THROUGH 6 FOLLOWING.

| | | | |
|---|---|---|---|
| *Theya Kanagaratnam* 10/03/2006 | | Trustor: | |
| Trustor: THEYA KANAGAPATNAM | | [ ] Married | [ ] Unmarried |
| [ ] Married *Theya Kanagaret* [ ] Unmarried | | | |
| Trustor: THEYA KANAGARATNAM | | Trustor: | |
| [ ] Married | [ ] Unmarried | [ ] Married | [ ] Unmarried |
| [ ] Married | [ ] Unmarried | [ ] Married | [ ] Unmarried |

STATE OF CALIFORNIA
COUNTY OF _____ *Alameda*

On **10/03/2006**, before me, *Phyllis E. Grigsby, Notary Public*
personally appeared **THEYA KANAGAPATNAM** personally known to me (or proved to me on the basis of satisfactory evidence) to be
the same person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

(Signature of Person Taking Acknowledgment)

MY COMMISSION EXPIRES ON:

*[notary seal:]*
PHYLLIS E. GRIGSBY
Commission # 1425004
Notary Public - California
Alameda County
My Comm. Expires Jun 16, 2007

                                    (Signature of Person Taking Acknowledgment Typed, Printed or Stamped)

You covenant that You are lawfully seized of the estate hereby conveyed and have the right to mortgage, grant, and convey the Property,
and that the Property is unencumbered, except for the encumbrances of record and any first deed of trust.  You covenant that You warrant
and will defend generally the title to the Property against all claims and demands, except those disclosed in writing to Us as of the date of
this Deed of Trust.

You and We covenant and agree as follows:

1.  **Payment of Indebtedness.**  Borrower shall promptly pay when due the indebtedness secured by this Deed of Trust including, without
limitation, that evidenced by the Agreement.

2.  **Application of Payments.**  Unless applicable law provides otherwise, all payments received by Us under the Agreement will be
applied to the principal balance and any finance charges, late charges, collection costs, and other charges owing with respect to the
indebtedness secured by this Deed of Trust in such order as We may choose from time to time.

3.  **Charges; Liens.**  Except as expressly provided in this Paragraph 3, You shall pay all taxes, assessments and other charges, fines and
impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if
any, by Your making payments, when due, directly to the payee thereof.  In the event You make payments directly to the payee thereof,
upon Our request You shall promptly furnish to Us receipts evidencing such payment.

CTX-I1-S1-703-CA                            2 of 6                           Revised 09/27/2006
KANAGARATNAM                                                                 ACAPS: 106091318334000

Deed of Trust, continued                                      citibank®

You shall make payments, when due, on any indebtedness secured by a deed of trust or other lien that is prior in right time to this Deed of Trust (a "Prior Deed of Trust"). You shall promptly discharge the lien of any Prior Deed of Trust not disclosed to Us in writing at the time of application for the Agreement, provided, however, that You shall not be required to discharge any such lien so long as You shall (a) in good faith contest such lien by, or defend enforcement of such lien in, legal proceedings which operate to prevent the enforcement of the lien or forfeiture of the Property or any part thereof, or (b) secure from the holder of such prior lien an agreement in form and substance satisfactory to Us subordinating such lien to this Deed of Trust. You shall not enter into any agreement with the holder of a Prior Deed of Trust whereby such Prior Deed of Trust, or the indebtedness secured thereby is modified, amended, extended or renewed, without Our prior written consent. You shall neither request nor allow any future advances to be secured by a Prior Deed of Trust without Our prior written consent.

4. Hazard Insurance. You shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and such other hazards as We may require (including flood insurance coverage, if required by Us) and in such amounts and for such periods as We may require. Unless We require in writing otherwise, the policy shall provide insurance on a replacement cost basis in an amount not less than that necessary to comply with any coinsurance percentage stipulated in the hazard insurance policy. All insurance policies and renewals thereof shall be in form and substance and with carriers acceptable to Us and shall include a standard mortgage clause in favor of and in form and substance satisfactory to Us. In the event of loss, You shall give prompt notice to the insurance carrier and Us. We may make proof of loss if not made promptly by You.

If the Property is abandoned by You, or if You fail to respond to Us within thirty (30) days from the date the notice is mailed by Us to You that the insurance carrier offers to settle a claim for insurance benefits, We are authorized to collect and apply the insurance proceeds at Our option either to restoration or repair of the Property, or to sums secured by this Deed if Trust.

If the Property is acquired by Us under Paragraph 14 of this Deed of Trust, all of Your right, title and interest in and to any insurance policies, and in and to the proceeds thereof resulting from damage to the Property prior to the sale or acquisition, shall pass to Us to the extent of the sums secured by this Deed of Trust immediately prior to such sale or acquisition.

The provisions of this Paragraph 4 shall be subject to the provisions of Paragraph 5 if this Deed of Trust covers a unit in a condominium project or planned unit development.

5. Preservation and Maintenance of Property; Condominiums and Planned Unit Developments. If this Deed of Trust is on a unit in a condominium or a planned unit development (herein "Condominium Project"), then: (a) You shall perform all of Your obligations under the declaration or covenants creating or governing the Condominium Project, the by-laws and regulations of the Condominium Project, and all constituent documents (herein "Project Documents"), including the payment when due of assessments imposed by the homeowners association or other governing body of the Condominium Project (herein "Owner's Association"); (b) You shall be deemed to have satisfied the insurance requirements under Paragraph 4 of this Deed of Trust if the Owners Association maintains in full force and effect a "master" or "blanket" policy on the Condominium Project which provides insurance coverage against fire, hazards included within the term "extended coverage" and such other hazards (including flood insurance) as We may require, and in such amounts and for such periods as We may require naming Us as additional loss payee; (c) the provisions of any Project Documents regarding the application of any insurance proceeds from "master" or "blanket" policies covering the Condominium Project shall supersede the provisions of Paragraph 4 of this Deed of Trust to the extent necessary to avoid conflict between the provisions thereof and hereof; (d) You hereby assign to Us the right to receive distributions on account of the Property under "master" or "blanket" policies covering the Condominium Project to the extent not applied to the restoration or repair of the Property, with any such distributions in excess of the amount necessary to satisfy in full the obligations secured by this Deed of Trust being paid to You; (e) You shall give Us prompt written notice of any lapse in any insurance coverage under a "master" or "blanket" policy on the Condominium Project; and (f) You shall not, without Our prior written consent, consent to either (i) the abandonment or termination of the Condominium Project (except for the abandonment or termination provided by law in the case of substantial destruction by fire or other casualty or in the case of a taking or condemnation or eminent domain), (ii) any material amendment to the Project Documents (including any change in the percentage interests of the unit owners in the Condominium Project), or (iii) the effectuation of any decision by the Owners Association to terminate professional management and assume self-management of the Condominium Project. If the Property has rental units, You shall maintain insurance against not less in addition to the other hazards for which insurance is required herein.

6. Protection of Our Security. If You fail to perform Your obligations under this Deed of Trust, or if any action or proceedings adversely affects Our interest in the Property, We may, at Our option, take any action reasonably necessary (including, without limitation, paying expenses and attorney fees and to have entry upon the Property to make repairs) to perform Your obligations or to protect Our interests. Any amounts disbursed by Us pursuant to this Paragraph 6, with interest thereon at the variable rate described in the Agreement, shall become indebtedness secured by this Deed of Trust (except as expressly provided herein). Nothing contained in this Paragraph 6 shall require Us to incur any expense or take any action hereunder.

CFX-H-51-703-CA                            3 of 6                        Revised 09/27/2006
KANAGARATNAM                                                        ACAPS: 106091318334000

Deed of Trust, continued                                    citibank®

7. **Inspection.** We or Our agents may enter and inspect the Property, after giving You reasonable prior notice.

8. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Us. Neither Borrower nor You will be relieved of any obligation to make payments if We apply the award received to the outstanding balance owed.

If You abandon the Property, or if, after notice by Us to You that the condemnor offers to make an award or settle a claim for damages, You fail to respond to Us within thirty (30) days after the date such notice is mailed, We are authorized to collect and apply the proceeds in the same manner as provided in Paragraph 4 hereof.

9. **Forbearance Not a Waiver.** Any forbearance by Us in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy in the future. Any waiver by Us must be in writing and signed by Us.

10. **Successors and Assigns Bound; Joint and Several Liability; Captions.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, Your and Our respective successors and assigns, subject to the provisions of Paragraph 13 hereof. All Your covenants and agreements shall be joint and several. The captions and headings of the paragraphs of this Deed of Trust are for convenience only and are not to be used to interpret or define the provisions hereof. Any Trustor who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Trustor's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Trustor hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Trustor's consent and without releasing that Trustor or modifying this Deed of Trust as to that Trustor's interest in the Property.

11. **Notices.** Except for any notice required under applicable law to be given in another manner, (a) any notice to You provided for in this Deed of Trust shall be given by personal delivery or by mailing such notice by first-class postage paid, addressed to You at the address of the Property shown at the beginning of the Deed of Trust or at such other address as You may designate by notice to Us as provided herein, and (b) any notice to Us shall be given by personal delivery or by mailing such notice by certified mail, return receipt requested, to Our address stated herein or to such other address as We may designate by notice to You as provided herein.

12. **Severability.** If any term of this Deed of Trust is found to be unenforceable, all other provisions will remain in full force.

13. **Due on Transfer Provision - Transfer of the Property.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in You is sold or transferred and You are not a natural person) without Our prior written consent, We may, at Our option, require immediate payment in full of all sums secured by this Deed of Trust. However, We shall not exercise this option if the exercise is prohibited by applicable law as of the date of this Deed of Trust. If We exercise this option, We shall give You notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which all sums secured by this Deed of Trust must be paid. If these sums are not paid prior to the expiration of this period, We may invoke any remedies permitted by this Deed of Trust without further notice or demand on You.

14. **Default.** If You breach any term in this Deed of Trust, or if Borrower fails to perform any obligation under the Agreement, We may, at Our option, declare all sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale under this Deed of Trust and any other remedies permitted by law. We may collect from You all reasonable costs incurred in enforcing the terms of this Deed of Trust, including attorney's fees and allocated costs of Our salaried employees.

15. **Assignment of Rents.** As additional security hereunder, You hereby assign to Us the rents of the Property; provided, however, that You shall have, prior to acceleration under Paragraph 14 hereof or abandonment of the Property, the right to collect and retain such rents as they become due and payable.

16. **Future Loan Advances.** Upon Your request, We at Our option may make Future Loan Advances to You or Borrower. Such Future Loan Advances, with interest thereon, shall be secured by this Deed of Trust when evidenced by a promissory note or agreement stating that said note or agreement is so secured.

17. **Release.** Upon payment of all sums secured by this Deed of Trust and upon (a) expiration of the Agreement or (b) Your request, We shall release this Deed of Trust and You shall pay all costs of recordation, if any.

Deed of Trust, continued                                            **citibank®**

18. **Appointment of Receiver; Lender in Possession.** Upon acceleration under this Deed of Trust or abandonment of the Property, We shall be entitled to have a receiver appointed by a court to enter upon, take possession of, and manage the Property and collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including but not limited to, receiver's fees and premiums on the receiver's bonds and reasonable attorneys' fees and then to the sums secured by this Deed of Trust. The receiver shall be liable to account only for those rents actually received.

19. **Statement of Obligation.** We may collect a fee for furnishing a statement of obligation in an amount not to exceed the maximum amount permitted under applicable law.

20. **No Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for Our benefit in any capacity, without Our prior written consent.

21. **Fixture Filing.** This Deed of Trust constitutes a financing statement filed as a fixture filing in the Official Records of the County Recorder of the county in which the Property is located with respect to any and all fixtures included within the term "Property" as used in this Deed of Trust and with respect to any goods or other personal property that may now or hereafter become such fixtures.

22. **Third Party Waivers.** In the event that any of You has not also signed the Agreement as Borrower, each of You: (a) agrees that We may, from time to time, without notice to, consent from or demand on You, and without affecting or impairing in any way any of Our rights or Your obligations, (i) renew, extend, accelerate, compromise or change the interest rate or other terms of the Agreement and any promissory note or agreement evidencing a Future Loan Advance, and (ii) accept, waive and release other security (including guarantees) for the obligations arising under the Agreement or any promissory note or agreement evidencing a Future Loan Advance, and (b) waives (i) any right to require Us to proceed against any Borrower or any other person, proceed against or exhaust any security for the obligations secured by this Deed of Trust or pursue any other remedy in Our power whatsoever, (ii) any defense or right against Us arising out of any disability or other defense or cessation of liability of any Borrower for any reason other than full payment, (iii) any defense or right against Us arising out of Our foreclosure upon the Property, even though such foreclosure results in the loss of any right of subrogation, reimbursement or other right You have against any Borrower, (iv) all presentments, diligence, protests, demands and notice of protest, dishonor, and nonperformance, (v) until payment in full of the indebtedness secured by this Deed of Trust, any right of subrogation or the benefit of any security for such indebtedness, and (vi) the benefit of the statute of limitations affecting the Property to the extent permitted by law. Any partial payment by Borrower or other circumstance that operates to toll any statute of limitations as to such person shall operate to toll such statute as to You.

23. **Choice of Law.** The Deed of Trust will be governed by United States federal law and, to the extent the United States federal law is inapplicable, then by the laws of the State of Nevada; except that, with regard to the perfection and enforcement of Citibank's security interest in the Property, the Deed of Trust will be governed by the law of the state where the Property is located.

24. **Your Copy.** You shall be given one conformed copy of the Agreement and this Deed of Trust.

25. **Loan Charges Legislation Affecting Our Rights.** If the Agreement is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Agreement exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any such loan charge already collected from You or Borrower which exceeded permitted limits will be refunded to You or Borrower; We may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to You or Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge due. If enactment or expiration of applicable laws has the effect of rendering any provision of the Agreement or this Deed of Trust unenforceable according to its terms, We may at Our option, require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted by Paragraph 14.

26. **Substitute Trustee.** We may, at our Option, from time to time remove the Trustee and appoint a successor Trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor Trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

27. **Reconveyance.** After compliance with all requirements of the Agreement, We shall request the Trustee to reconvey the Property to You. Trustee shall reconvey the Property without warranty. You shall pay any fee legally charged by the Trustee for the issuance of reconveyance and all costs of recordation.

Deed of Trust, continued

**citibank**

## REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR DEED OF TRUST OR MORTGAGE

We and You request the holder of any encumbrance with a lien which has priority over this Deed of Trust give notice to Us, at Our address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

## REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the Agreement secured by this Deed of Trust. The Agreement together with all other indebtedness and obligations secured by this Deed of Trust have been paid and performed in full. Trustee is hereby directed to cancel the Agreement and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all estate now held by Trustee to the persons legally entitled thereto.

Date: _____    _____

CFX-IUSI-703-CA
KANAGARATNAM

6 of 6

Revised 09/27/2006
ACAPS: 106091318334000

# SCHEDULE  A

The following described real property in the City of Oakland, County of Alameda State of California:

Parcel One:

An undivided 4.2% interest as tenant in common in and to Tract 4135, filed April 2, 1979, in Book 110, Page 5, of Maps, Alameda County Records.

Parcel Two:

Unit 16, Building 2316, as shown on said condominium Plan.

Tax ID: 023-0415-036

**ILLEGIBLE NOTARY SEAL DECLARATION**
(Government Code 27361.7)

I declare under penalty of perjury that the notary seal on the document to which this statement is attached, reads as follows:

NAME OF NOTARY PUBLIC: _____ PHYLLIS E GRIGSBY _____

COMMISSION NUMBER: _____ 1425004 _____

COMMISSION EXPIRES: _____ 6/169/07 _____

NOTARY PUBLIC STATE: CA COUNTY: _____ ALAMEDA _____

SIGNATURE OF DECLARANT: _____

PRINT NAME OF DECLARANT: _____ ERICA DULLY _____

CITY & STATE OF EXECUTION: _____ OAKLAND _____

DATE SIGNED: _____ 10/3/06 _____

# EXHIBIT C



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

Borrower(s):   **THEYA KANAGARATNAM**

Property Address: **2316 LAKESHORE AV, 16, OAKLAND, CA  94606** (the "Property")

| | |
|---|---|
| Credit Limit: | $100,000.00 |
| Index: | 8.250% |
| Initial Margin (if applicable): | Not Applicable |
| Initial Daily Periodic Rate (if applicable): | Not Applicable |
| Initial **ANNUAL PERCENTAGE RATE** (if applicable): (The Initial Annual Percentage Rate will vary as the Index varies) | Not Applicable |
| Date the Initial Margin Ends and Regular Margin Begins (if applicable): | Not Applicable |
| Regular Margin: | 0.500% |
| Regular Daily Periodic Rate: | 0.023973% |
| Regular **ANNUAL PERCENTAGE RATE**: (The Regular Annual Percentage Rate will vary as the Index varies) | 8.750% (Index +/- the Regular Margin) |



## Closing Costs, Paid by Citibank*

| | | | |
|---|---|---|---|
| Appraisal Fee: | $310.00 | Recording Fees: Alameda County Recorder | $34.00 |
| Credit Report Fee: | $2.00 | City/County Tax/Stamps: | $0.00 |
| Flood Certification Fee (Finance Charge): | $4.25 | State Tax/Stamps: | $0.00 |
| Settlement or Closing Fee (Finance Charge): NASCO | $350.00 | Intangible Tax: | $0.00 |
| Abstract or Title Search Fee: NASCO | $50.00 | Document Stamp Tax: | $0.00 |
| Title Examination Fee: | $0.00 | Mortgage Registration Tax: | $0.00 |
| Title Insurance Binder: | $0.00 | Tax Certificate Fee: | $0.00 |
| Document Preparation: | $0.00 | Mortgage Taxes:    Borrower Portion | $0.00 |
| Overnight/Postage Fee (Finance Charge): | $0.00 |                            Lender's Portion | $0.00 |
| Appraisal Recertification Fee: | $0.00 | | |

Total Closing Costs:      **$ 750.25**

*These charges are paid outside of the closing by Lender.  However, if your loan is terminated within the first 36 months, with the exception of the Lender's Portion of the Mortgage Taxes and the Document Preparation Fee, you will be required to repay us all of these closing costs incurred on your behalf.

The undersigned Borrower(s), jointly and severally if more than one, agree to all of the terms and conditions of this Home Equity Line of Credit Agreement and Disclosure, which consists of 9 pages, and acknowledge receipt of a completed copy, along with the notice about Your Billing Rights.  The date of this Agreement is the latest date next to a Borrower's signature.

_Theya Kanagaratnam_ TK                    10/03/2006                    _____

THEYA KANAGARATNAM

_Thuy Kanagara_                              _____        _____



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

1.  **DEFINITIONS:** As used herein:

    a)  "Account" means the Home Equity Line of Credit Account opened under the Agreement.

    b)  "Agreement" means this Home Equity Line of Credit Agreement and Disclosure together with any modifications, amendments, replacements or substitutions thereto.

    c)  "Business Day" means any day other than a Saturday, Sunday or a federal holiday.

    d)  "Citibank" means Citibank, N.A..

    e)  "Credit Limit" means the maximum aggregate amount of the Loan Advances that may be outstanding at any given time pursuant to the Agreement.

    f)  "Draw Period" means the ten years from the date of the Agreement during which Loan Advances may be made.



    g)  "Index" means the highest Prime Rate as published in the Money Rates section of *The Wall Street Journal* from time to time. *The Wall Street Journal* is available at many newsstands and public libraries, or you may obtain copies from The Wall Street Journal, 200 Burnett Road, Chicopee, Massachusetts 01020. A Prime Rate is not necessarily the lowest or best rate available.

    h)  "Initial Pricing" means that your Agreement has an Initial Margin, Initial Daily Periodic Rate, and an Initial Annual Percentage Rate.

    i)  "Loan Advances" means amounts drawn on your Account pursuant to the Agreement by Home Equity Line of Credit checks, or in any other way Citibank allows, and advances by Citibank pursuant to the Agreement or Mortgage to protect the Property or Citibank's security interest in the Property, including but not limited to advances to maintain required insurance on the Property or to pay taxes on the Property.

    j)  "Mortgage" means the mortgage, deed of trust, deed to secure debt or cooperative security agreement which covers the Property which secures the Agreement.

    k)  "Property" means the property described in the Mortgage which secures the Agreement.

    l)  "Repayment Period" means the twenty years immediately following the Draw Period during which Loan Advances may not be made.

    m)  "You," "Your" and "Yours," whether or not the first letter of the word is capitalized, means each person who signs below as Borrower, jointly and severally.

    Certain other terms are defined elsewhere in this Agreement.

2.  **PROMISE TO PAY:** You promise to pay to Citibank the total of all Closing Costs (if indicated above that Closing Costs are paid by Borrower), all Loan Advances, together with Finance Charges at the applicable daily periodic rate, and any other fees, charges or other Finance Charges, all as provided for in the Agreement.

3.  **HOW FINANCE CHARGES ARE IMPOSED AND DETERMINED:**

    a)  Finance Charges on Loan Advances at the applicable Daily Periodic Rate begin to accrue on the date the Loan Advance is posted to your Account. There is no grace period for repayment of your balance during which Finance Charges will not accrue. If there are any other Finance Charges payable under the Agreement, they will be dollar amounts itemized herein as Finance Charges and will be due and payable on the date of the Agreement.

    b)  The appropriate margin is added to the Index to determine the Annual Percentage Rate, which will be divided by 365 (366 in leap years) to determine the Daily Periodic Rate which will be applied to the balance on which the Finance Charge will be computed during your monthly billing cycle.

---

769717  000009075  09SP25  00064047



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE



    c)   The Index used for a billing cycle will be the daily Index rate published each Business Day.

    d)   If your Account has Initial Pricing:
        (i)   The Initial Margin shown above will be in effect from the date of the Agreement until the Date the Initial Margin Ends and Regular Margin Begins shown above.
        (ii)  The Initial Annual Percentage Rate and the Initial Daily Periodic Rate, shown above, will be in effect from the date of the Agreement and can change each Business Day.
        (iii) On the Date the Initial Margin Ends and Regular Margin Begins shown above, the Regular Margin shown above will go into effect.  If the Index has not changed so as to affect the rate, the Regular Annual Percentage Rate and Regular Daily Periodic Rate shown above will then be in effect and can change each Business Day.

    e)   If your Account does not have Initial Pricing:
        (i)   The Regular Margin shown above will be in effect from the date of the Agreement.
        (ii)  The Regular Annual Percentage Rate and the Regular Daily Periodic Rate will be in effect from the date of the Agreement and can change each Business Day.

    f)   Any increase in the Annual Percentage Rate will result in an increase in the minimum monthly payment.  The Annual Percentage Rate will not exceed 18%, no matter how much the Index increases.

    g)   You will be sent statements on a monthly cycle which will reflect your Account activity and any amounts you owe Citibank. The amount of the Finance Charge in your statements will be calculated by multiplying the daily periodic rate for the day by the daily balance for your Account at the end of each day in the monthly billing cycle.  The resulting Finance Charges for each day are totaled at the end of the statement period and disclosed on the statement as "Finance Charges - Interest".  To determine the daily balance Citibank takes the beginning balance of your Account each day, adds any new Loan Advances and other charges, and subtracts any payments and credits.  Late Fees, credit life insurance, if any, and unpaid Finance Charges will not be counted as part of the daily balance for purposes of calculating the Finance Charge.

    h)   Payments are applied first to due and unpaid Finance Charges and other charges and then to the unpaid balance of Loan Advances.

## 4.  FINANCE CHARGES NOT DUE TO DAILY PERIODIC RATE; CLOSING COSTS:

    a)   If you retained a mortgage broker, the amount of the mortgage broker fee, if any, is a Finance Charge.  The amount of the mortgage broker fee is determined by your agreement with your mortgage broker and is not required by Citibank or paid by Citibank.

    b)   If you agreed to pay the Closing Costs for your Account, your Closing Costs include Finance Charges in the amounts shown on page one of this Agreement for the cost of flood and tax certifications, overnight courier fees, and the cost charged by Citibank's attorneys or closing agents to conduct the closing for your Account.

## 5.  OTHER CHARGES:  These are charges other than Finance Charges.  These charges are not counted as part of your daily unpaid balance of Loan Advances for purposes of computing Finance Charges:

    a)   There is a $50 Annual Fee associated with your Account.  This fee will automatically be charged to your Account in the same manner as a Loan Advance beginning on the first anniversary of your Account opening and annually thereafter.

    b)   Late Fee.  If Citibank does not receive the full amount of any monthly payment due within 15 calendar days of the due date, you will be charged a Late Fee equal to the greater of 6% of the overdue payment or $5.  However, you will not be charged a Late Fee on an unpaid Late Fee.



## HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE



c)   **Overlimit Fee.** If there is a Loan Advance which causes your Credit Limit to be exceeded, Citibank will charge you a $29 overlimit fee. This charge will not be imposed on more than one transaction in any monthly billing cycle.

d)   **Stop Payment Fee.** If you request Citibank to stop payment on one of your Home Equity Line of Credit Checks, Citibank will charge you an $8 stop payment charge per request.

e)   **Returned Item Fee.** If your payment is returned unpaid for any reason, Citibank will charge you a $25 returned item fee.

f)   **Early Closure Release Fee.** If Citibank pays the closing costs to open your Account and, within 36 months of the date of this Agreement, you request that your Account be closed or take any other action which will result in a release of the Mortgage, you agree to pay an early closure release fee which will consist of all costs Citibank incurred to open your Account. These costs are disclosed as Closing Costs on the first page of this Agreement. The amount of this fee will be automatically charged to your Account in the same manner as a Loan Advance.

g)   **Other Fees Disclosed in Agreement.** Any charges imposed by Citibank, if any, in connection with your Account are disclosed above at the beginning of the Agreement and in Section 13 below.

h)   **Other Fees Disclosed in Mortgage.** You agree to pay any other fees or charges provided for in the Mortgage or otherwise provided for in the Agreement.

i)   **Fee to Release Prior Lien.** You may have to pay a fee to release a prior lien or security interest in the Property.

j)   You agree to pay any reasonable costs incurred by Citibank in connection with the enforcement of its rights and remedies under the Agreement and the Mortgage, including, but not limited to, any reasonable attorneys' fees and other collection costs.

6.   **SECURITY INTEREST IN PROPERTY:** As security for the Agreement, you are giving Citibank a security interest in the Property located at the address shown above, which security interest secures all of your obligations under this Agreement and the Mortgage. This Property is more fully described in the Mortgage you will sign along with this Agreement. Collateral which secures other obligations to Citibank may also secure the Agreement.

7.   **PAYMENT TERMS:** You agree to pay your monthly payments by the due date shown on your monthly statement. During the Draw Period, you agree to pay a minimum monthly payment, which will be shown on your monthly statement, and which will equal the sum of any past due or over Credit Limit amounts plus accrued and unpaid Finance Charges and other unpaid fees or charges imposed pursuant to the Agreement. Your paying this minimum monthly payment will not reduce the principal balance of Loan Advances which you owe Citibank, except to the extent over Credit Limit amounts are paid. During the Repayment Period, you agree to pay a monthly payment, which will be shown on your monthly statement, and which will equal the Finance Charges that have accrued on the outstanding balance for the billing period, plus principal equal to the greater of $50 or 1/240th of your principal balance of Loan Advances as of the end of the Draw Period, plus the sum of the following amounts when applicable: past due amounts on your Account, amount owing in excess of your Credit Limit, Late Fees and other charges imposed pursuant to the Agreement. On the last payment due date of the Repayment Period, any remaining unpaid amounts owed Citibank will be due and payable. You may prepay your Account in whole or in part at any time without penalty, but if you request that your Account be closed or take any other action which will result in a release of the Mortgage, you may owe an early closure release fee as provided for in the OTHER CHARGES section. Loan Advances may not be drawn to make payments on the Account. Citibank may accept late payments or partial payments, even though marked "payment in full," without losing any of Citibank's rights under the Agreement.



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

8. **TRANSACTION REQUIREMENTS:** You may draw Loan Advances during the Draw Period up to your Credit Limit if your Account has not been closed or suspended or your Credit Limit reduced to where further Loan Advances would not be permitted.

9. **TERMINATION OF ACCOUNT BY CITIBANK:** Citibank may close your Account, and require payment of the outstanding balance in full in a single payment, if:



   a)  You fail to meet the repayment terms of the Agreement for any outstanding balance.

   b)  There has been fraud or a material misrepresentation by you in connection with the Account.

   c)  You take any action or fail to take any action which adversely affects the Property or Citibank's security interest in the Property, including but not limited to: a transfer of title to the Property or sale of the Property without Citibank's written permission; a failure to maintain any required insurance on the Property; failure to pay taxes on the Property; you permit the filing of a lien senior to that held by Citibank; the sole Borrower obligated on the Account dies; the Property is taken through eminent domain; a prior lien-holder forecloses; you commit waste or otherwise destructively use or fail to maintain the Property in a way that adversely affects the Property; there is illegal use of the Property which could subject the Property to seizure; one of two Co-Borrowers dies and Citibank's security is thereby adversely affected; or you move out of the Property and Citibank's security is thereby adversely affected.

   d)  You are or become an "executive officer" of Citibank as defined in Federal Reserve Board Regulation O and Citibank determines to require payment in full to comply with federal regulation.

In addition to the foregoing, Citibank shall have the right to exercise any and all of it rights and remedies allowed by law or as set forth in this Agreement or in the Mortgage, including, but not limited to, the right to bring an action against you and the right to bring a foreclosure action against the Property.

10. **SUSPENSION OF ACCOUNT OR REDUCTION OF CREDIT LIMIT BY CITIBANK:** Citibank may prohibit additional extensions of credit or reduce your Credit Limit during any period in which:

   a)  You or any of you request a suspension of the Account or reduction of the Credit Limit.

   b)  The maximum Annual Percentage Rate is reached.

   c)  The value of the Property declines significantly below the Property's appraised value for purposes of the Account. As an example, if the value of the Property declines such that the initial difference between the Credit Limit and the available equity (based on the Property's appraised value) is reduced by fifty percent, such an event would constitute a significant decline in the value of the Property.

   d)  Citibank reasonably believes that you will be unable to fulfill the repayment obligations under the Agreement because of a material change in your financial circumstances.

   e)  You are in default of any material obligation under the Agreement or Mortgage.

   f)  Citibank is precluded by government action from imposing the Annual Percentage Rate provided for in the Agreement.

   g)  The priority of Citibank's security interest is adversely affected by government action to the extent that the value of the security interest is less than 120% of the Credit Limit.

   h)  Citibank is notified by its regulatory agency that continued advances constitute an unsafe and unsound practice.

If any of the above circumstances change during the Draw Period and you want to reopen your Account or increase your Credit Limit to the original Credit Limit, you must make such a request to Citibank in writing and pay any bona fide and reasonable appraisal and credit report fees actually incurred by Citibank to investigate whether the above circumstances continue to exist. If Citibank suspended your Account or reduced your Credit Limit as a result of your request, the request for reinstatement must be signed by all of you.

769717 000009075 09SP25 00064047



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

You agree that you will not attempt to obtain any additional credit extensions once you know that your credit privileges have been terminated or suspended.  As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations under the Agreement.



11. **OTHER CHANGES TO THE ACCOUNT:**  Citibank may change the Index and Regular Margin used under the Agreement if the original Index is no longer available, the new index has an historical movement substantially similar to that of the original Index, and the new index and margin would have resulted in an Annual Percentage Rate substantially similar to the rate in effect at the time the original Index became unavailable.  Citibank may make a specified change to the Account if you specifically agree to the change in writing at that time.  Citibank may make changes to the Account that will unequivocally benefit you throughout the remainder of the Account.  Citibank may make insignificant changes in the terms of the Account, including but not limited to: changing the address to which payments are sent; minor changes to features such as the billing cycle date, the payment due date and the day of the month on which Index values are measured; changes in rounding practices within the tolerance rules allowed by applicable regulation; and changes to balance computation methods if the change produces an insignificant difference in the Finance Charge you pay.

12. **PROMOTIONAL RATE OFFERS:**  At Citibank's discretion, Citibank may offer you a promotional rate (a promotional daily periodic rate and/or promotional margin).  The period of time for which the promotional rate applies may be limited.  Citibank will allocate your payments and credits to pay off balances at low promotional rates before paying off balances at higher periodic rates.  Any promotional rate, the corresponding periodic rate, and the period of time during which it is in effect will be disclosed to you.  Any promotional rate offer will be subject to the terms of the offer and this Agreement.

13. **OPTIONAL CONVERTED BALANCE FEATURE FOR CERTAIN ACCOUNTS:**

   *Option to Convert.*  Subject to the limitations described below, during the Draw Period and the first 15 years of the Repayment Period, you have the option to convert all or any portion of your Account balance to a fixed **Annual Percentage Rate** and Daily Periodic Rate for a fixed term.  The **Annual Percentage Rate** does not include costs other than interest.  Your exercise of your option to convert is subject to your meeting all of the conditions described below at the time that the fixed rate becomes effective.

   *Conversion Requirements.*  Each balance you convert to a fixed rate (the "Converted Balance") must be for a minimum amount of $10,000.00.  The aggregate unpaid amount of all your Converted Balances may not exceed $500,000.00.  However, Citibank may, in its sole discretion and without prior notice, allow the aggregate unpaid amount of all your Converted Balances to exceed $500,000.00.  Citibank's decision to allow the aggregate unpaid amount of all your Converted Balances to exceed $500,000.00 for any fixed rate conversion does not obligate it to allow the aggregate unpaid amount of all your Converted Balances to exceed $500,000.00 for any subsequent fixed rate conversion.  Each Converted Balance may consist of any portion of the variable rate balance of your Account, any portion of any existing Converted Balance, or both.  You may have outstanding a maximum of three (3) Converted Balances at any one time and you may not establish more than five (5) Converted Balances during the term of your Account.  At the time of each conversion, you will designate the term for repayment of the Converted Balance.  The term for repayment of the Converted Balance will be between 12 to 240 months, but must not exceed the last payment due date of the Repayment Period.  You must sign all documentation requested by Citibank on a timely basis in order to effectuate a conversion to a fixed rate.  Each conversion to a fixed rate will be effective on the first day of the monthly billing cycle that follows Citibank's receipt and processing of that documentation.  You may not use your conversion option to establish a fixed rate for a new Loan Advance drawn on the Account.  If you wish to authorize Citibank to pay your minimum monthly payments automatically from your checking or other authorized account, you must authorize Citibank to do so for all of your minimum monthly payments on all of your Converted Balances and the variable rate balance of your Account, and any cancellation or change with respect to that authorization will apply to all of your Converted Balances and the variable rate balance of your Account.

   *Credit Limit.*  The portion of your Credit Limit that is available for other Loan Advances will be reduced by the aggregate amount of unpaid Converted Balances.  As you repay the principal of each Converted Balance, your available Credit Limit will be replenished in like amounts, subject to the conditions that generally apply to your right to obtain Loan Advances under the terms of this Agreement.

   *Conversion Fees.*  We may charge you $50 each time you elect to convert a portion of your Account balance to a fixed rate.

---

CFU-H-NO-000-WT
KANAGARATNAM

6 of 10

Revised 09/27/2006
ACAPS: 106091318334000

769717  000009075  09SP25  00064047



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

*Fixed* **Annual Percentage Rate** *and Daily Periodic Rate.* The **Annual Percentage Rate** for each Converted Balance shall be fixed and will be determined based upon the value of a margin (the "Conversion Margin") and an index (the "Conversion Index"), which are described below. Citibank will add the Conversion Margin to the Conversion Index to determine the **Annual Percentage Rate** for the Converted Balance. The maximum **Annual Percentage Rate** that can apply to a Converted Balance is 18%. The Daily Periodic Rate for the Converted Balance will be equal to the **Annual Percentage Rate** for the Converted Balance divided by 365 (366, in a leap year).

*Calculation of Periodic* **Finance Charges.** The periodic **Finance Charge** on each Converted Balance for each monthly billing cycle will be calculated as follows. First, Citibank will determine the "daily Converted Balance" for each day of the monthly billing cycle. To determine the "daily Converted Balance," Citibank will take the beginning balance of the Converted Balance each day and subtract any payments and credits relating to that Converted Balance that are received that day. Late Fees, credit life insurance, if any, and unpaid **Finance Charges** will not be counted as part of the daily Converted Balance for purposes of calculating the periodic **Finance Charge**. Second, Citibank will multiply the daily Converted Balance for each day in the monthly billing cycle by the Daily Periodic Rate in effect for that day. This will calculate the periodic **Finance Charge** for each day in the monthly billing cycle. Third, Citibank will add together the resulting amounts, which will be the total periodic **Finance Charge** for the Converted Balance for the monthly billing cycle.

*The Conversion Index.* The Conversion Index is the 3-year Interest rate swap listed in the Board of Governors of the Federal Reserve System's Federal Reserve Statistical Release H.15 - Selected Interest Rates (Weekly), as most recently available on the effective date of the conversion to a fixed rate. This Federal Reserve publication can be found on the Board of Governors of the Federal Reserve System's internet web site at http://www.federalreserve.gov or may be obtained from the Board of Governors of the Federal Reserve System, Publications Services, 20th Street and Constitution Avenue, NW, Washington, D.C. 20551. If the Conversion Index or any replacement Conversion Index becomes unavailable, Citibank will select a new Conversion Index that will have a historical movement substantially similar to that of the unavailable Conversion Index, and the Conversion Margin will be changed so that the new Conversion Index plus the Conversion Margin will result in a new fixed rate that is substantially similar to the fixed rate that would have applied at the time that the unavailable Conversion Index became unavailable.

*The Conversion Margin.* The Conversion Margin for each Converted Balance shall be determined by us in our sole discretion based upon the term and rate available, at the time of each exercise of your option, for a comparable home equity loan offered by us to customers having similar line sizes, combined loan to value ratios and credit scores similar to you. A complete disclosure of the terms of that will apply to your Converted Balance shall be provided to you at the time of the conversion.

*Minimum Monthly Payment.* Your minimum monthly payment for each Converted Balance is the amount sufficient to repay the original principal balance of the Converted Balance, together with periodic **Finance Charges** at the applicable **Annual Percentage Rate**, in full in substantially equal monthly installments during the scheduled term for repayment of the Converted Balance. The entire outstanding principal balance of the Converted Balance, together with all accrued and unpaid **Finance Charges** and all other fees and charges relating to the Converted Balance, if not sooner paid, will be due and payable in full in a single payment on the last payment due date of the scheduled term for repayment of the Converted Balance. Citibank is not obligated to refinance this amount. The minimum monthly payment will not change by reason of the commencement of the Repayment Period. The minimum monthly payment is in addition to the minimum monthly payment that is due for the variable rate portion of your Account, as provided in Section 7 above, and will be due on the same payment due dates as are payments for the variable rate portion of your Account.

*Conditions to Exercise of Your Option to Convert.* Your right to exercise your option to convert is subject to your meeting all of the following conditions on the date that the conversion to the fixed rate is effective: (a) your Credit Limit must be for $25,000.00 or more, (b) you must not be in default under any of the provisions of this Agreement and there may not be any defaults under any provisions of the Mortgage, (c) your Account and your right to obtain Loan Advances may not then be terminated or suspended.

14. **TAX IMPLICATIONS:** You should consult a tax advisor regarding the deductibility of interest (Finance Charges) and other charges under the Agreement.

15. **DELAY IN ENFORCEMENT:** Citibank may delay the exercise of Citibank's rights under the Agreement or Mortgage without losing them.

CFU-H-NO-000-WT
KANAGARATNAM

7 of 10

Revised 09/27/2006
ACAPS: 106091318334000

769717  000009075  09SP25  00064047



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE



16. **PROPERTY INSURANCE:** You agree to maintain insurance on the Property as provided for in the Mortgage.  If Borrower fails to maintain property insurance, Citibank may obtain insurance coverage, at Citibank's option and Borrower's expense.  Citibank is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage shall cover Citibank, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.  Any amounts disbursed by Citibank under this Section shall be considered Loan Advances and become additional debt of Borrower secured by the Mortgage.

17. **CREDIT INFORMATION:** You understand and agree that Citibank may obtain credit reports for credit applications and for updates, renewals or extensions of the credit granted.  Upon request, Citibank will inform you if a report has been obtained and will give you the name and address of the agency that furnished the report.  You also agree that Citibank may obtain and use credit reports and other information that Citibank has obtained in a lawful manner consistent with Citibank's privacy policies about you for subsequent solicitations or for any other lawful purpose.

18. **FURTHER ASSURANCES:** You agree that, upon Citibank's request, you will promptly execute, acknowledge, initial and deliver to Citibank any documentation Citibank deems necessary to replace or correct any lost, misplaced, misstated or inaccurate document signed by you at closing.

19. **GOVERNING LAW:** The Agreement will be governed by United States federal law and, to the extent the United States federal law is inapplicable, then by the laws of the State of Nevada; except that, with regard to the perfection and enforcement of Citibank's security interest in the Property, the Agreement will be governed by the law of the state where the Property is located.

20. **DUE ON SALE:** The Mortgage or Deed of Trust which covers the Property contains substantially the following provision:  Due on Transfer Provision – Transfer of the Property.  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in You is sold or transferred and You are not a natural person) without Citibank's prior written consent, Citibank may, at Citibank's option, require immediate payment in full of all sums secured by this Mortgage or Deed of Trust.  However, Citibank shall not exercise this option if the exercise is prohibited by applicable law as of the date of this Mortgage or Deed of Trust. If Citibank exercises this option, Citibank shall give You notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which all sums secured by this Mortgage or Deed of Trust must be paid.  If these sums are not paid prior to the expiration of this period, Citibank may invoke any remedies permitted by this Mortgage or Deed of Trust without further notice or demand on You.

21. **CHANGE IN NAME, ADDRESS OR EMPLOYMENT:** You agree to notify us in writing of any change in name, address or employment.

22. **NO WAIVER:** Neither you nor Citibank shall be deemed to have waived any of rights, powers or remedies hereunder unless such waiver is embodied in a writing executed by either you or Citibank.  The waiver by either you or Citibank of any breach or default by the other party to the Agreement in the performance of any obligation hereunder shall not constitute a waiver of any subsequent breach or default.

23. **NOTICES:** All notices provided for in the Agreement shall be in writing and shall be deemed given (a) when delivered on a Business Day if delivered personally, (b) on the day after deposit with any overnight courier if such date is a Business Day, (c) three days after deposit in the United States mail, if delivered by certified mail, return receipt requested, postage prepaid and addressed to you at the address set forth on the first page of the Agreement or addressed to Citibank at the customer service address shown on your monthly statement.

24. **INVALIDITY CLAUSE:** If any provision of the Agreement shall be otherwise unlawful, void, or for any reason unenforceable, then that provision shall be enforced to the maximum extent permissible so as to effect the intent of you and Citibank.  In either case, the remainder of the Agreement shall continue in full force and effect.

769717  000009075  09SP25  00064047



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

## YOUR BILLING RIGHTS (KEEP THIS NOTICE FOR FUTURE USE)

This notice contains important information about your rights and Citibank's responsibilities under the Fair Credit Billing Act.

**Notify Citibank in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write to Citibank on a separate sheet at the address listed on your bill. Write to Citibank as soon as possible. Citibank must hear from you no later than 60 days after Citibank sent you the first bill on which the error or problem appeared. You can telephone Citibank, but doing so will not preserve your rights.

In your letter, give us the following information:



* Your name and Account number.
* The dollar amount of the suspected error.
* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized Citibank to pay your Home Equity Line of Credit bill automatically from your checking or other authorized account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach Citibank three business days before the automatic payment is scheduled to occur.

## YOUR RIGHTS AND CITIBANK'S RESPONSIBILITIES AFTER
## CITIBANK RECEIVES YOUR WRITTEN NOTICE

Citibank must acknowledge your letter within 30 days, unless Citibank has corrected the error by then. Within 90 days, Citibank must either correct the error or explain why Citibank believes the bill was correct.

After Citibank receives your letter, Citibank cannot try to collect any amount you question, or report you as delinquent. Citibank can continue to bill you for the amount you question, including Finance Charges, and Citibank can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while Citibank is investigating, but you are still obligated to pay the parts of your bill that are not in question.

If Citibank finds that Citibank made a mistake on your bill, you will not have to pay any Finance Charges related to any questioned amount. If Citibank did not make a mistake, you may have to pay Finance Charges, and you will have to make up any missed payments on the questioned amount. In either case, Citibank will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that Citibank thinks you owe, Citibank may report you as delinquent. However, if Citibank's explanation does not satisfy you and you write to Citibank within ten days telling Citibank that you still refuse to pay, Citibank must tell anyone Citibank reports you to that you have a question about your bill. And, Citibank must tell you the name of anyone Citibank reported you to. Citibank must tell anyone Citibank reports you to that the matter has been settled between you and Citibank when it finally is.

If Citibank does not follow these rules, Citibank cannot collect the first $50 of the questioned amount, even if your bill was correct.



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE

**AUTHORIZATION TO CHARGE ACCOUNT – AUTO-DEDUCT SERVICE**

By signing below, you authorize Citibank to charge your account described below to pay the minimum amounts due Citibank under the above Home Equity Line of Credit Agreement and Disclosure.

Financial Institution Name: _____

Address: _____

ABA Number: _____

Account type:        [ ] Checking          [ ] Money Market          [ ] Savings

Account Number: _____

_____          _____
Authorized Signature     Date                    Authorized Signature     Date

As an option and not a condition to the Agreement, Citibank has offered you the convenience of making payments using pre-authorized payments from a checking or savings account as described.

Your payment will be made automatically on your current due date from your account described above. If your due date falls on a weekend or holiday, your payment will be deducted on the last business day before your due date. If there are insufficient funds in your account, Citibank may debit your account for the payment when sufficient funds are available. Your payment will be made automatically at the minimum due amount, as indicated on your billing statement. Even after you enroll for the auto-deduct service, you should continue to make payments due under your statement until the auto-deduct service is in place for your Account.

Citibank reserves the right to cancel the auto-deduct service for your Account if there are insufficient funds in your Account for any three consecutive scheduled debits or if any payment is 60 days in arrears. Citibank also reserves the right to change the terms and conditions of this Auto Deduct Agreement after 21 days prior notice to you.

YOU MAY ATTACH A COPY OF A VOIDED CHECK OR PREPRINTED DEPOSIT OR WITHDRAWAL SLIP FROM THE ACCOUNT DESCRIBED ABOVE IN WHICH FUNDS ARE TO BE DEBITED FROM.

769717 000009075 09SP25 00064047

# EXHIBIT D

2023054365     05/12/2023 02:43 PM     3 PGS

OFFICIAL RECORDS OF ALAMEDA COUNTY
MELISSA WILK, CLERK-RECORDER
RECORDING FEES: $105.00

RECORDING REQUESTED BY:
National Default Servicing Corporation
WHEN RECORDED MAIL TO:
NATIONAL DEFAULT SERVICING CORPORATION
7720 N. 16th Street, Suite 300
Phoenix, AZ 85020

**ELECTRONICALLY RECORDED**

T.S. No. 22-01281-CE-CA
Title No. 2173814
A.P.N. 023-0415-036-00

# NOTICE OF TRUSTEE'S SALE

*ATTENTION RECORDER*: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS
APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY PURSUANT TO CIVIL CODE
2923.3

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10/03/2006. UNLESS YOU TAKE
ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED
AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD
CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, (cashier's check(s) must be made payable to National Default
Servicing Corporation), drawn on a state or national bank, a check drawn by a state or federal credit union, or a
check drawn by a state or federal savings and loan association, savings association, or savings bank specified in
Section 5102 of the Financial Code and authorized to do business in this state; will be held by the duly appointed
trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter
described property under and pursuant to a Deed of Trust described below. The sale will be made in an "as is"
condition, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to
pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon,
as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and
expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably
estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: **Theya Kanagaratnam, A Single Woman**
Duly Appointed Trustee: **National Default Servicing Corporation**
Recorded **10/10/2006** as Instrument No. **2006381619** (or Book, Page) of the Official Records of Alameda County,
California.

Date of Sale: **06/20/2023** at **12:00 PM**
Place of Sale: **At the Fallon Street entrance to the County Courthouse, 1225 Fallon Street, Oakland, CA 94612**
Estimated amount of unpaid balance and other charges: **$70,169.52**
Street Address or other common designation of real property: **2316 Lakeshore Av, 16, Oakland, CA 94606**
A.P.N.: **023-0415-036-00**

Page 2
Notice of Trustee's Sale
T.S. No.  22-01281-CE-CA

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above.  If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

The requirements of California Civil Code Section 2923.5(b)/2923.55(c) were fulfilled when the Notice of Default was recorded.

NOTICE TO POTENTIAL BIDDERS: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

NOTICE TO PROPERTY OWNER: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call 714-730-2727 or visit this internet website www.ndscorp.com/sales, using the file number assigned to this case 22-01281-CE-CA. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the internet website. The best way to verify postponement information is to attend the scheduled sale.

Page 3
Notice of Trustee's Sale
T.S. No. 22-01281-CE-CA

NOTICE TO TENANT*: You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are a "representative of all eligible tenant buyers" you may be able to purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call 888-264-4010, or visit this internet website www.ndscorp.com, using the file number assigned to this case 22-01281-CE-CA to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as a "representative of all eligible tenant buyers" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

*Pursuant to Section 2924m of the California Civil Code, the potential rights described herein shall apply only to public auctions taking place on or after January 1, 2021, through December 31, 2025, unless later extended.

Date: 05/11/2023

National Default Servicing Corporation
c/o Tiffany & Bosco, P.A., its agent,
1455 Frazee Road, Suite 820
San Diego, CA 92108       Toll Free Phone: 888-264-4010
Sales Line 714-730-2727; Sales Website: www.ndscorp.com

Connie Hernandez,  Trustee Sales Representative

# EXHIBIT E

| Call Date | Call Time (EST) | Status | From | To |
|---|---|---|---|---|
| 1/11/2021 | 8:18 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 1/12/2021 | 3:42 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 1/13/2021 | 3:21 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 1/14/2021 | 3:11 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/15/2021 | 8:30 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/15/2021 | 7:49 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 1/16/2021 | 3:50 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/18/2021 | 5:28 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 1/18/2021 | 1:53 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/19/2021 | 8:20 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/20/2021 | 2:28 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/21/2021 | 8:36 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/21/2021 | 3:02 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/22/2021 | 8:27 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 1/22/2021 | 4:51 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 1/23/2021 | 2:26 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/25/2021 | 6:41 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/26/2021 | 2:25 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 1/27/2021 | 3:51 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 1/28/2021 | 2:20 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 1/29/2021 | 6:28 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/3/2021 | 5:02 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/4/2021 | 6:15 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 2/5/2021 | 6:03 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/8/2021 | 6:18 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/9/2021 | 8:46 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/9/2021 | 7:47 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/10/2021 | 8:04 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/11/2021 | 5:22 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/12/2021 | 3:01 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/13/2021 | 2:12 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/16/2021 | 5:29 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 2/17/2021 | 7:03 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/18/2021 | 6:32 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/19/2021 | 8:54 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/19/2021 | 7:50 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/20/2021 | 4:09 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/22/2021 | 8:15 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/23/2021 | 8:24 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/24/2021 | 4:51 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/25/2021 | 3:48 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/26/2021 | 5:13 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/1/2021 | 8:40 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/2/2021 | 8:23 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/3/2021 | 8:18 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/3/2021 | 3:43 PM | Missed | (800) 242-7178 | (510) 356-5776 |

| 3/4/2021 | 4:36 PM | Missed | (800) 242-7178 | (510) 356-5776 |
|---|---|---|---|---|
| 3/5/2021 | 3:28 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/6/2021 | 3:11 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/8/2021 | 2:39 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/9/2021 | 7:20 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/10/2021 | 3:07 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/11/2021 | 3:16 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/11/2021 | 2:43 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/11/2021 | 2:12 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/12/2021 | 6:51 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/12/2021 | 2:19 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/13/2021 | 2:24 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/15/2021 | 8:54 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/15/2021 | 6:20 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/16/2021 | 1:18 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 3/17/2021 | 6:04 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/18/2021 | 3:42 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/19/2021 | 8:00 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/19/2021 | 5:19 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/19/2021 | 3:42 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/20/2021 | 12:12 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/22/2021 | 4:38 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/23/2021 | 6:49 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/24/2021 | 7:04 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/25/2021 | 7:20 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/26/2021 | 4:08 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/27/2021 | 2:07 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/29/2021 | 4:21 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/30/2021 | 3:48 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/31/2021 | 7:45 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/1/2021 | 8:12 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/2/2021 | 7:34 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/3/2021 | 1:17 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/5/2021 | 3:56 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/6/2021 | 3:34 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/7/2021 | 5:31 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/8/2021 | 8:40 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/9/2021 | 8:19 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/9/2021 | 3:51 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/10/2021 | 4:26 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/12/2021 | 3:57 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/13/2021 | 3:38 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/14/2021 | 4:02 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/15/2021 | 5:51 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/16/2021 | 3:33 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/17/2021 | 12:14 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/19/2021 | 5:07 PM | Missed | (800) 242-7178 | (510) 356-5776 |

| | | | | |
|---|---|---|---|---|
| 4/20/2021 | 6:15 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/21/2021 | 4:54 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/22/2021 | 5:18 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/23/2021 | 8:34 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/23/2021 | 3:47 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/24/2021 | 3:58 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/26/2021 | 8:12 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/27/2021 | 8:52 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/27/2021 | 6:44 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/28/2021 | 6:47 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/29/2021 | 8:07 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 4/30/2021 | 6:12 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 5/1/2021 | 1:31 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 5/3/2021 | 5:06 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 5/4/2021 | 6:24 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/5/2021 | 5:53 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/6/2021 | 5:34 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/7/2021 | 7:40 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/8/2021 | 3:50 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/10/2021 | 5:51 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/11/2021 | 5:59 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/13/2021 | 5:57 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/14/2021 | 5:32 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/17/2021 | 8:43 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/18/2021 | 5:12 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/19/2021 | 8:21 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/19/2021 | 3:19 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/20/2021 | 5:14 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/21/2021 | 7:57 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/21/2021 | 4:09 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/21/2021 | 1:04 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/22/2021 | 4:31 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/24/2021 | 3:06 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/25/2021 | 7:21 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/25/2021 | 4:56 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/25/2021 | 2:11 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/27/2021 | 7:55 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/27/2021 | 4:44 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/27/2021 | 2:19 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/28/2021 | 4:33 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/28/2021 | 1:19 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/1/2021 | 5:10 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/2/2021 | 8:10 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/2/2021 | 2:47 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/3/2021 | 8:47 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/3/2021 | 3:18 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/4/2021 | 7:16 PM | Missed | (800) 242-7178 | (510) 356-5776 |

| 6/4/2021 | 5:12 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
|---|---|---|---|---|
| 6/4/2021 | 1:05 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/5/2021 | 2:12 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/8/2021 | 5:28 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/9/2021 | 3:20 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/10/2021 | 4:11 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/11/2021 | 3:52 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/11/2021 | 2:51 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 6/11/2021 | 12:25 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/12/2021 | 3:52 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/14/2021 | 5:07 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/14/2021 | 4:05 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/14/2021 | 2:53 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/15/2021 | 3:31 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/15/2021 | 1:40 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/16/2021 | 5:07 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/16/2021 | 4:04 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/16/2021 | 2:57 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/17/2021 | 6:36 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/17/2021 | 4:21 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/17/2021 | 1:01 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/18/2021 | 3:28 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/18/2021 | 1:57 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/18/2021 | 12:29 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/19/2021 | 2:47 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/21/2021 | 3:29 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/22/2021 | 4:45 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/22/2021 | 3:42 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/22/2021 | 2:06 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/23/2021 | 7:38 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/23/2021 | 4:46 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/23/2021 | 3:06 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/24/2021 | 7:48 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/24/2021 | 4:45 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/25/2021 | 6:09 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/25/2021 | 4:58 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/25/2021 | 3:10 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/26/2021 | 3:57 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/28/2021 | 6:17 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/28/2021 | 3:33 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/29/2021 | 5:04 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/29/2021 | 3:45 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/29/2021 | 12:49 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/30/2021 | 4:44 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/30/2021 | 3:25 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/30/2021 | 12:58 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/1/2021 | 4:04 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |

| | | | | |
|---|---|---|---|---|
| 7/1/2021 | 12:23 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/2/2021 | 3:56 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/3/2021 | 2:26 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/6/2021 | 4:55 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/8/2021 | 3:58 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/8/2021 | 2:13 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/9/2021 | 3:45 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/10/2021 | 12:08 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/12/2021 | 6:52 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/14/2021 | 3:16 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/15/2021 | 2:34 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/16/2021 | 7:53 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/16/2021 | 4:58 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/16/2021 | 3:25 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/17/2021 | 3:24 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/19/2021 | 6:04 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/20/2021 | 3:17 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/21/2021 | 3:45 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/22/2021 | 5:50 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/22/2021 | 4:05 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/23/2021 | 6:31 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/23/2021 | 4:20 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/23/2021 | 12:17 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/24/2021 | 12:09 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/26/2021 | 6:34 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/26/2021 | 4:56 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/26/2021 | 3:04 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/27/2021 | 7:44 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/28/2021 | 7:19 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/28/2021 | 3:51 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/29/2021 | 5:01 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/30/2021 | 3:35 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/31/2021 | 4:02 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/31/2021 | 2:37 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/2/2021 | 8:05 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/3/2021 | 5:05 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/4/2021 | 3:37 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/5/2021 | 4:39 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/5/2021 | 2:15 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/5/2021 | 1:06 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/6/2021 | 5:06 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/6/2021 | 4:04 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/6/2021 | 2:28 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/7/2021 | 2:31 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/9/2021 | 5:39 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/9/2021 | 4:32 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/9/2021 | 3:03 PM | Missed | (800) 242-7178 | (510) 356-5776 |

| 8/10/2021 | 4:58 PM | Missed | (800) 242-7178 | (510) 356-5776 |
|---|---|---|---|---|
| 8/11/2021 | 6:31 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/11/2021 | 4:49 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/11/2021 | 3:19 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/12/2021 | 4:48 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/13/2021 | 2:31 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/14/2021 | 2:17 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/16/2021 | 4:27 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/17/2021 | 2:57 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/18/2021 | 8:10 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/19/2021 | 7:03 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/20/2021 | 12:56 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/21/2021 | 1:01 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/23/2021 | 5:57 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/24/2021 | 2:45 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/25/2021 | 2:14 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/26/2021 | 2:39 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/27/2021 | 6:06 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/27/2021 | 3:14 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/28/2021 | 4:50 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/28/2021 | 3:49 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/28/2021 | 2:23 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/30/2021 | 2:10 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/31/2021 | 4:08 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/1/2021 | 12:56 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/2/2021 | 7:39 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/3/2021 | 3:19 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/4/2021 | 1:22 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/7/2021 | 6:30 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/8/2021 | 4:08 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/9/2021 | 5:05 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/9/2021 | 3:46 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/10/2021 | 7:26 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/11/2021 | 4:38 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/11/2021 | 3:30 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/13/2021 | 4:42 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/13/2021 | 3:10 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/13/2021 | 12:18 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/14/2021 | 4:47 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/15/2021 | 7:36 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/16/2021 | 12:36 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/17/2021 | 7:09 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/18/2021 | 12:05 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/20/2021 | 5:09 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/21/2021 | 2:35 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/21/2021 | 1:34 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/22/2021 | 6:42 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |

| 9/22/2021 | 5:30 PM | Missed | (800) 242-7178 | (510) 356-5776 |
|---|---|---|---|---|
| 9/22/2021 | 3:19 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/23/2021 | 3:30 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/24/2021 | 3:54 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/25/2021 | 4:26 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/25/2021 | 1:59 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/27/2021 | 1:53 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/28/2021 | 4:18 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/29/2021 | 4:32 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/30/2021 | 5:46 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/1/2021 | 7:26 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/1/2021 | 6:10 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/2/2021 | 1:45 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/4/2021 | 4:33 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/5/2021 | 8:44 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/6/2021 | 8:37 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/7/2021 | 8:26 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/8/2021 | 6:48 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/9/2021 | 2:04 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/12/2021 | 5:17 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/13/2021 | 5:52 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/14/2021 | 7:43 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/15/2021 | 4:58 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/16/2021 | 12:05 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/18/2021 | 7:33 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/19/2021 | 4:53 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/20/2021 | 7:50 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/21/2021 | 5:06 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 10/22/2021 | 4:01 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 10/23/2021 | 2:20 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/25/2021 | 8:01 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/26/2021 | 7:32 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/27/2021 | 5:33 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/27/2021 | 3:56 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/27/2021 | 3:55 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/28/2021 | 3:41 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/29/2021 | 4:44 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 11/1/2021 | 5:54 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 11/2/2021 | 6:49 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 11/3/2021 | 8:03 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 11/4/2021 | 5:35 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 11/5/2021 | 1:57 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 11/6/2021 | 1:30 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 11/8/2021 | 4:12 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 11/9/2021 | 8:09 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 11/10/2021 | 6:45 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 11/12/2021 | 6:58 PM | Answered | (800) 242-7178 | (510) 356-5776 |

| 11/13/2021 | 12:06 PM | Missed | (800) 242-7178 | (510) 356-5776 |
|---|---|---|---|---|
| 11/15/2021 | 3:50 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 11/16/2021 | 6:10 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 11/17/2021 | 2:40 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 11/18/2021 | 4:17 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 11/18/2021 | 1:05 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 11/19/2021 | 6:23 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 11/19/2021 | 5:11 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 11/19/2021 | 2:45 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 11/20/2021 | 3:48 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 11/20/2021 | 2:04 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 11/20/2021 | 1:00 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 11/22/2021 | 3:34 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 11/23/2021 | 8:22 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 11/24/2021 | 4:50 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 11/26/2021 | 4:57 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 11/26/2021 | 3:55 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 11/26/2021 | 2:52 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 11/27/2021 | 1:47 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 11/29/2021 | 6:42 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 11/30/2021 | 8:10 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 12/2/2021 | 2:39 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/4/2021 | 12:42 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 12/6/2021 | 2:16 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 12/7/2021 | 1:38 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/8/2021 | 1:53 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 12/9/2021 | 2:24 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/10/2021 | 12:11 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 12/11/2021 | 12:04 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 12/13/2021 | 3:01 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 12/14/2021 | 1:19 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 12/15/2021 | 3:24 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 12/16/2021 | 4:11 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/17/2021 | 4:07 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 12/18/2021 | 12:06 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 12/20/2021 | 12:22 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/21/2021 | 4:22 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/22/2021 | 5:57 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/23/2021 | 12:47 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/24/2021 | 1:23 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/27/2021 | 4:17 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 12/28/2021 | 12:21 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/29/2021 | 4:59 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/30/2021 | 6:41 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 12/31/2021 | 12:41 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 1/3/2022 | 7:53 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/4/2022 | 7:24 PM | Missed | (800) 242-7178 | (510) 356-5776 |

| | | | | |
|---|---|---|---|---|
| 1/5/2022 | 6:37 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/6/2022 | 8:37 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/7/2022 | 1:03 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 1/8/2022 | 12:04 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/10/2022 | 4:38 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/11/2022 | 5:52 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 1/12/2022 | 12:27 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/13/2022 | 1:01 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 1/14/2022 | 7:39 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/15/2022 | 12:04 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/18/2022 | 5:25 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/19/2022 | 6:19 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/20/2022 | 8:32 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/21/2022 | 8:34 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/22/2022 | 12:06 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/24/2022 | 8:09 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 1/27/2022 | 8:46 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/28/2022 | 8:52 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/29/2022 | 12:06 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/31/2022 | 5:31 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 2/1/2022 | 12:01 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 2/2/2022 | 12:45 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 2/3/2022 | 2:09 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/4/2022 | 1:51 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 2/5/2022 | 12:07 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 2/7/2022 | 2:52 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 2/8/2022 | 2:44 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 2/9/2022 | 1:24 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 2/10/2022 | 12:36 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/11/2022 | 12:19 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 2/12/2022 | 12:04 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 2/14/2022 | 1:13 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 2/15/2022 | 12:13 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 2/16/2022 | 12:36 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 2/17/2022 | 12:49 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 2/18/2022 | 12:12 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 2/19/2022 | 12:03 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/22/2022 | 12:19 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/23/2022 | 5:14 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 2/24/2022 | 3:46 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 2/25/2022 | 2:50 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 2/26/2022 | 12:52 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/28/2022 | 3:56 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/1/2022 | 2:16 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/2/2022 | 2:55 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/3/2022 | 1:19 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/4/2022 | 12:26 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |

| | | | | |
|---|---|---|---|---|
| 3/5/2022 | 12:08 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/7/2022 | 4:39 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/8/2022 | 12:43 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 3/10/2022 | 7:40 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/11/2022 | 3:37 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/12/2022 | 12:05 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/12/2022 | 12:05 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/14/2022 | 12:52 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/15/2022 | 12:41 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/16/2022 | 1:27 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/17/2022 | 12:16 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 3/18/2022 | 12:21 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 3/19/2022 | 12:00 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/21/2022 | 12:31 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/22/2022 | 5:00 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/23/2022 | 12:15 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/24/2022 | 2:00 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/25/2022 | 1:09 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 3/26/2022 | 12:03 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/28/2022 | 12:30 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/29/2022 | 1:23 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/30/2022 | 12:52 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 3/31/2022 | 4:51 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/1/2022 | 5:25 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/2/2022 | 12:02 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/4/2022 | 1:18 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/5/2022 | 1:10 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/6/2022 | 2:04 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/7/2022 | 12:47 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/8/2022 | 12:28 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/9/2022 | 12:15 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/11/2022 | 12:53 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/12/2022 | 5:31 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/13/2022 | 2:22 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/14/2022 | 12:25 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/15/2022 | 12:10 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/16/2022 | 12:03 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/18/2022 | 1:54 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/19/2022 | 1:36 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 4/20/2022 | 3:30 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/21/2022 | 2:00 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/22/2022 | 1:41 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/23/2022 | 12:04 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 4/25/2022 | 12:41 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 4/26/2022 | 1:29 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 4/27/2022 | 1:13 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 4/28/2022 | 4:21 PM | Answered | (800) 242-7178 | (510) 356-5776 |

| 4/29/2022 | 2:23 PM | Answered | (800) 242-7178 | (510) 356-5776 |
|---|---|---|---|---|
| 5/2/2022 | 5:25 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/3/2022 | 2:57 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/4/2022 | 12:24 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 5/4/2022 | 12:24 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 5/5/2022 | 12:15 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/6/2022 | 12:47 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/7/2022 | 12:08 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/9/2022 | 2:02 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/10/2022 | 1:23 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/11/2022 | 12:17 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/12/2022 | 1:25 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/13/2022 | 2:14 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/14/2022 | 12:05 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/16/2022 | 3:58 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/17/2022 | 12:23 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/18/2022 | 12:40 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/19/2022 | 12:45 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/20/2022 | 12:16 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/21/2022 | 12:10 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/23/2022 | 4:25 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/24/2022 | 2:40 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/25/2022 | 1:18 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 5/26/2022 | 6:59 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/27/2022 | 2:43 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/28/2022 | 12:06 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 5/31/2022 | 5:37 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 6/1/2022 | 3:39 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 6/2/2022 | 12:10 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 6/3/2022 | 1:06 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/4/2022 | 12:07 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 6/6/2022 | 12:13 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/6/2022 | 12:12 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/7/2022 | 1:20 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/8/2022 | 12:17 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/8/2022 | 12:17 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/9/2022 | 2:03 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/9/2022 | 2:03 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/10/2022 | 12:51 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/10/2022 | 12:50 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/11/2022 | 12:06 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/13/2022 | 4:03 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 6/14/2022 | 1:28 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/15/2022 | 1:33 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/16/2022 | 12:11 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/17/2022 | 2:46 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 6/18/2022 | 12:05 PM | Answered | (800) 242-7178 | (510) 356-5776 |

| | | | | |
|---|---|---|---|---|
| 6/21/2022 | 5:33 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 6/22/2022 | 1:19 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 6/23/2022 | 1:51 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 6/24/2022 | 2:05 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 6/25/2022 | 12:03 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 6/27/2022 | 3:20 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 6/28/2022 | 1:02 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 6/29/2022 | 2:24 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 6/30/2022 | 12:43 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/1/2022 | 1:39 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 7/2/2022 | 12:05 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 7/5/2022 | 3:09 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/6/2022 | 4:39 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/7/2022 | 1:00 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 7/8/2022 | 12:22 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 7/9/2022 | 12:04 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 7/11/2022 | 3:20 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 7/12/2022 | 12:12 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/13/2022 | 12:43 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 7/14/2022 | 12:12 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 7/15/2022 | 12:12 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 7/16/2022 | 12:07 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 7/18/2022 | 4:21 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 7/19/2022 | 1:05 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 7/20/2022 | 12:36 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 7/21/2022 | 5:03 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/22/2022 | 12:01 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 7/23/2022 | 12:05 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/25/2022 | 2:46 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 7/26/2022 | 12:24 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 7/27/2022 | 5:32 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 7/29/2022 | 1:07 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 8/1/2022 | 2:16 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/2/2022 | 12:21 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 8/3/2022 | 12:17 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 8/4/2022 | 2:47 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/5/2022 | 12:13 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 8/6/2022 | 12:02 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/8/2022 | 12:38 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/9/2022 | 12:57 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 8/10/2022 | 1:52 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 8/11/2022 | 12:21 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 8/12/2022 | 12:12 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 8/13/2022 | 12:07 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/15/2022 | 6:56 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/16/2022 | 1:16 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/17/2022 | 1:25 PM | Answered | (800) 242-7178 | (510) 356-5776 |

| 8/18/2022 | 6:59 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
|---|---|---|---|---|
| 8/19/2022 | 12:05 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/20/2022 | 12:02 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 8/22/2022 | 1:11 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/23/2022 | 1:07 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/24/2022 | 12:47 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 8/25/2022 | 12:42 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 8/26/2022 | 12:11 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 8/27/2022 | 12:02 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/29/2022 | 12:15 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 8/30/2022 | 12:41 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 8/31/2022 | 12:22 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/1/2022 | 12:25 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 9/3/2022 | 12:04 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/6/2022 | 1:17 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/7/2022 | 12:38 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/8/2022 | 12:30 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/9/2022 | 12:43 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 9/10/2022 | 12:04 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/12/2022 | 12:24 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/13/2022 | 12:25 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/14/2022 | 12:21 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 9/15/2022 | 12:49 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 9/16/2022 | 7:11 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 9/17/2022 | 12:03 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 9/19/2022 | 6:34 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/20/2022 | 12:31 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 9/21/2022 | 12:29 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 9/22/2022 | 1:52 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 9/23/2022 | 12:53 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 9/24/2022 | 12:03 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 9/26/2022 | 12:05 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 9/27/2022 | 12:07 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 9/29/2022 | 1:33 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 9/30/2022 | 12:36 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 10/3/2022 | 5:43 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/4/2022 | 7:51 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/5/2022 | 1:06 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/6/2022 | 12:24 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/7/2022 | 12:27 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/8/2022 | 12:01 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/11/2022 | 2:22 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 10/12/2022 | 2:39 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/13/2022 | 1:52 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 10/14/2022 | 4:06 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 10/15/2022 | 12:03 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/17/2022 | 3:26 PM | Answered | (800) 242-7178 | (510) 356-5776 |

| | | | | |
|---|---|---|---|---|
| 10/18/2022 | 12:26 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 10/19/2022 | 12:35 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/20/2022 | 2:59 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/21/2022 | 1:28 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/22/2022 | 12:05 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/24/2022 | 7:37 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/25/2022 | 2:21 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 10/26/2022 | 12:10 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 10/27/2022 | 12:31 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 10/28/2022 | 12:34 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 11/2/2022 | 12:28 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 11/12/2022 | 12:07 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 11/15/2022 | 2:25 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 11/18/2022 | 12:51 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 11/25/2022 | 12:44 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 11/28/2022 | 4:11 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 12/1/2022 | 3:49 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 12/8/2022 | 2:17 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 12/12/2022 | 12:36 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/15/2022 | 12:34 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/16/2022 | 12:29 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/17/2022 | 12:04 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 12/19/2022 | 12:23 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 12/20/2022 | 12:19 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/21/2022 | 12:06 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/22/2022 | 4:38 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 12/23/2022 | 12:13 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 1/3/2023 | 3:29 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/5/2023 | 2:59 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 1/6/2023 | 2:20 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 1/14/2023 | 12:03 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 1/17/2023 | 4:55 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/18/2023 | 2:34 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/19/2023 | 12:01 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 1/20/2023 | 12:39 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 1/28/2023 | 12:05 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 1/30/2023 | 5:14 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 1/31/2023 | 3:17 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 2/1/2023 | 3:17 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 2/2/2023 | 12:56 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 2/10/2023 | 12:23 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 2/11/2023 | 12:06 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 2/13/2023 | 1:21 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 2/14/2023 | 12:27 PM | VoiceMail | (800) 242-7178 | (510) 356-5776 |
| 2/15/2023 | 7:24 PM | Missed | (800) 242-7178 | (510) 356-5776 |
| 2/16/2023 | 1:51 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 2/17/2023 | 2:04 PM | Answered | (800) 242-7178 | (510) 356-5776 |

| 2/18/2023 | 12:01 PM | Answered | (800) 242-7178 | (510) 356-5776 |
| 2/21/2023 | 12:21 PM | Answered | (800) 242-7178 | (510) 356-5776 |

659 calls from CENLAR between  Jan 2021 - F